### STANDARD OIL CO. OF NEW JERSEY v. UNITED STATES et al.*

### RAYMOND CONCRETE PILE CO. v. STANDARD OIL CO. OF NEW JERSEY et al.

(Circuit Court of Appeals, Fourth Circuit. January 6, 1920.)

Nos. 1759, 1760.

Indemnity ☞6—Under building contract making expense from accident part of cost of work, owner liable for accidental injury to third persons; "accident."

Under a contract by which one party agreed as agent of the other to build a pier, cost of the work to be paid by the owner, and containing a provision that "any expense incurred in connection with any accident or damage upon person or property * * * shall be considered a part of the cost of the work," damage caused by a fire accidentally, but negli-

<hr>

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Judgment affirmed on rehearing 266 Fed. —.

gently, started by an employé of the contractor *held*, as between the parties to the contract, to impose the liability on the owner, for, speaking generally, but with reference to legal liabilities, an "accident" means any unintended and unexpected occurrence which produces hurt or loss, and does not entirely exclude negligence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accident.]

Appeals from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Consolidated suits in admiralty by the United States and others against the Standard Oil Company of New Jersey, the Raymond Concrete Pile Company, and others. From decree for libelants, defendants appeal. Affirmed.

For opinion below, see 258 Fed. 697.

John M. Woolsey, of New York City (Ritchie, Janney & Stuart, of Baltimore, Md., Kirlin, Woolsey & Hickox and Cleatus Keating, all of New York City, Robert W. Williams, of Washington, D. C., and James H. Herbert, on the brief), for Standard Oil Co. of New Jersey.

William L. Marbury and L. Vernon Miller, both of Baltimore, Md. (Griggs, Baldwin & Baldwin, of New York City, Marbury, Gosnell & Williams, of Baltimore, Md., and Martin Conboy, of New York City, on the brief), for Raymond Concrete Pile Co.

H. N. Abercrombie, of Baltimore, Md. (J. Craig McLanahan, of Baltimore, Md., on the brief), for Maryland Transportation Co.

Samuel K. Dennis, U. S. Atty., of Baltimore, Md., for the United States.

Before KNAPP and WOODS, Circuit Judges, and WEBB, District Judge.

WOODS, Circuit Judge. The substantial issue is whether, as between themselves, the Standard Oil Company or the Raymond Concrete Pile Company should bear the losses sustained by libelants from an oil fire in Baltimore harbor which occurred on November 22, 1918. The Raymond Company on June 17, 1918, agreed in writing with the Standard Oil Company to construct a new reinforced concrete pier 60 by 130 feet, and to remove the old piers. The contract provided that the Raymond Company, as agent of the Oil Company, was to direct the work through its officers, and hire and discharge laborers. It was to receive as compensation 12½ per cent. of the cost of the work, not exceeding $20,000, and a specified rental for certain machinery furnished. The Oil Company was to pay all cost of the work, which it was expressly stipulated would include (a) cost of material, machinery and labor; (b) cost or rental and maintenance of small tools, supplies, and construction equipment used, lost, or destroyed in or about the work; (c) transportation charges; (d) cost and maintenance of work office, including salaries of superintendent and other officers; (e) the cost of insurance and any expense incurred in connection with any accident or damage to person or property; (f) the

cost at salary rates of men in engineering and drafting department of the Raymond Company's New York office; (g) any traveling expenses or expenses of similar character, and any other expenditures which we may make in connection with this work, except for items specified in section 1, as furnished at our expense.

On the same day the stipulation as to accidents was made more definite by an agreement:

"That any expense incurred in connection with any accident or damage upon person or property, not covered by insurance, shall be considered a part of the cost of this work; but no fee shall be paid the contractor on such cost."

The Raymond Company at the time of the fire was using in the work two pile drivers. The water was covered with a film of inflammable oil, which had accumulated from the operations of the Standard Oil Company. Into this oil area a number of small pieces of floating wood had been carried by the wind. There was evidence to the effect that there had settled down over this film of oil an inflammable and explosive gas, produced from naphtha distillate which had leaked from the adjacent pipe line of the Standard Oil Company. It was the habit of the firemen of the pile drivers to empty the ashes from the fire box of the engine over the side into the water. The men on the pile driver were frequently cautioned by the officials of the Raymond Company and the Standard Oil Company not to cast hot coals into the water. About 2 o'clock in the afternoon of November 22, 1918, the fireman threw ashes into the water, and very soon after the oil, and perhaps gas also, lying on the water caught fire. The fire extended with great rapidity and violence and caused the damage of which the libelants complain.

Restatement of the testimony as to the origin of the fire would be of no value. The evidence seems to us conclusive in favor of the finding of the District Court that it originated from live coal ashes cast overboard. The evidence also sustains the finding of the District Court that the act of the fireman in emptying the coal ashes into the oil-covered water was negligent, and was the proximate cause of the fire. True, he had put water on them, and supposed all fire had been extinguished; but the danger from a live coal and the disastrous consequences of fire were so obvious that hardly any precautions would have been sufficient to justify the act of emptying into the water ashes from coal recently burned. Yet we cannot doubt that the fireman in good faith believed that he had taken due precaution and that there was no danger of fire from the ashes. The element of recklessness or wantonness is therefore entirely absent.

It is under these conditions that the issue arises whether under the contract for the work the Raymond Company or the Oil Company, as between themselves, should bear the losses of other persons due to the fire. In thus stating the issue we have designedly left out of view the negligence alleged against the Oil Company in having work done which required the use of fire on a pile driver stationed in water which it had covered with inflammable oil and gas, for the reasons: (1) That this condition was obvious to the Raymond Company when it

commenced the work; and (2) that we think the contract itself imposed on the Oil Company liability for damage resulting from the fire, though due to the negligence of a servant employed by the Raymond Company.

Viewing the contract in its entirety, we are unable to accept the view that the Oil Company, in assuming "any expense incurred in connection with accident or damage upon person or property not covered by insurance," meant accident in the sense of inevitable or unavoidable accident, or an unexpected event resulting in loss free of the element of negligence on the part of the servants employed in the work. True, the word is sometimes used in that sense, as in the statutes of 6 Anne, c. 31, and 14 Geo. III, c. 78, relating to exemption from communicated fires begun by accident. Filliter v. Phippard, 11 A. & E. Q. B. R. 346; Webb v. Railroad Co., 49 N. Y. 421, 10 Am. Rep. 389; Hoffman v. King, 160 N. Y. 618, 55 N. E. 401, 46 L. R. A. 672, 73 Am. St. Rep. 715. But these statutes had no relation to contract. They were enacted to relieve householders from the harsh rule of the common law that one in whose house a fire originated was liable for the loss of other houses to which the fire was communicated, without respect to negligence or care. All that the decisions mean is that the statute was not intended to relieve from liability for fire arising from negligence.

The word "accident" does not, in its generally understood meaning, entirely exclude negligence. The Supreme Court has approved the definition of accidental as:

"Happening by chance; unexpectedly taking place; not according to the usual course of things; or not as expected." Mutual Accident Association v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60.

This does not exclude the idea of negligence. If one expects damage to result from his act or omission, he passes beyond negligence to recklessness. The legal signification of "accident," as now generally understood, has been thus well stated:

"Whatever may be the difficulties in giving a definition of universal application, it may safely be said that in the legal contemplation of an accident some violence, casualty, or vis major is necessarily involved; and the fact that the negligence of the person injured contributed to produce the result will not make it any less an accident. Speaking generally, but with reference to legal liabilities, an accident means any unintended and unexpected occurrence which produces hurt or loss." 1 C. J. 394.

It is true as a general rule that no one can rid himself in advance of the obligation to use due care imposed by law or assumed by contract. So here the Raymond Company cannot escape its liability to the libelants by referring them to the contract with the Oil Company. But the rule does not extend to denial of the right of one about to undertake work requiring the use of fire and dangerous machinery to contract with an insurance company, or the other party to the contract for the work, for indemnity against the losses from the negligence of its employés. In modern conception such losses are as certain in the long run as the expenditures for material, labor, interest on money, insurance, and delay from weather conditions or strikes. Every person

who undertakes such work either for himself or as independent contractor or as a responsible agent estimates this factor of cost as an item of business risk. In this instance the contract was by the Raymond Company as agent of the Oil Company to plan and superintend the work, to hire and direct the laborers. The Oil Company assumed all other costs and liabilities incurred in the course of the enterprise. There is no reason why the factor of liability for accidents should not be placed by agreement on the Oil Company's side of the contract. This assumption of liability by the Oil Company of the items of outlay for accidents due to occasional acts of negligence to be expected of the servants employed on the work was no more unreasonable or against public policy than the assumption of the other expenses of the work which the Raymond Company might see fit to incur. As to these matters the obligation assumed by the Oil Company was subject to the implied duty of the Raymond Company of due effort to keep the costs within reasonable bounds, and to use due diligence to obtain competent servants and supervise the work with due care. Intentional or reckless disregard of either duty would have been ground of relief to the Oil Company on the ground of breach of the contract. But there was no other limitation to the promise of the defendant to pay the costs and damages incident to the enterprise. These conclusions are in accord with Westinghouse, Church, Kerr & Co. v. Long Island Railroad Co., 160 App. Div. 200, 145 N. Y. Supp. 201, affirmed 216 N. Y. 697, 110 N. E. 1051. We find no other case directly in point.

The point is made on the appeal apparently for the first time that the obligation assumed by the Oil Company was limited to losses from accident not covered by insurance and that there was no evidence as to the insurance. The question of the burden of proof on this subject is of minor importance. This being an admiralty case, upon due notice and proper showing, this court will entertain a motion by either party made within 20 days for leave to take testimony on the subject of insurance before this court or the District Court.

A formal decree of affirmance will be entered within 20 days, unless either party moves for leave to take further testimony on the question of insurance.