## PROCTOR v. PREFERRED ACC. INS. CO. OF NEW YORK.

## SAME v. TRAVELERS' INS. CO.

### Nos. 5721, 5722.

Circuit Court of Appeals, Sixth Circuit.

June 30, 1931.

J. Franklin Fairleigh, of Louisville, Ky. (J. J. Kavanaugh and M. D. Elston, both of Louisville, Ky., on the brief), for appellant.

Nathan Kahn and H. W. Coleman, both of Louisville, Ky. (Harris W. Coleman and Trabue, Doolan, Helm & Helm, all of Louisville, Ky., on the brief), for appellees.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

These suits were upon accident policies issued on behalf of Nelson W. Proctor, who died while the policies were in force. Appellees are not liable if the insured committed suicide, and the issue was whether his death was effected through accidental means or by suicide. By stipulation the cases were heard together.

Appellant insists that she was denied the right of a trial by jury in violation of the Seventh Amendment to the Constitution and section 770 of the Judicial Code (title 28, § 770, U. S. C., 28 USCA § 770), in that the jury heard no testimony in open court as provided by section 635 of the Judicial Code (title 28, § 635, U. S. C., 28 USCA § 635). This matter came up as follows:

There had been a previous trial, and when the case came on the second time the court announced that if the evidence for plaintiff should be the same or substantially the same as on the former trial the court would direct a verdict for the defendants. Counsel for all parties responded that in so far as they were informed the evidence would be substantially the same. Thereupon plaintiff and defendants stipulated that the evidence would be the same or substantially the same as upon the former trial and that the testimony heard on the former trial should be the evidence upon the present trial. The bill of exceptions continues:

"Thereupon without the hearing of oral testimony or examination of witnesses in open court, and without the Court or jury hearing any testimony from either plaintiff or defendant Court upon the evidence aforesaid peremptorily instructed the jury to find for the defendant in each case, and accordingly the jury in each case found a verdict for the defendant.

"The evidence aforesaid heard upon the former trial in this case and by stipulation heard on this trial of the case is in words and figures as follows: * * *"

Neither the quoted portion of the bill of exceptions nor the record entries make it exactly clear whether the evidence taken upon the former trial was actually read in the presence of the jury. We assume that it was not, but that the court directed a verdict upon his own recollection of the evidence. Whatever the fact is, the whole procedure grew out of the stipulation that the

testimony heard on the former trial should be the evidence in the case. This stipulation was entered into after the parties had been advised by the court that in such case it would direct a verdict for defendant. Appellant's counsel were present, participated in the trial, and, so far as the record indicates, fully acquiesced in the procedure. They neither raised objection nor took exception to any feature of it. We think therefore that the matters complained of were clearly waived and any supposed irregularity therein cannot now be taken advantage of. Kearney v. Case, 12 Wall. 275, 285, 20 L. Ed. 395. Judgment was rendered on November 12, 1929, and no further steps were taken until February 7, 1930, when appellant moved the court to set aside the verdict and judgment upon the ground that they were each void and were rendered contrary to law. We regard this as nothing more than a motion for a new trial. It suggested no specific error, was overruled, and is not reviewable.

■ A directed verdict was proper. The undisputed testimony is that the insured, 48 years old, an attorney having a substantial income, happily married for 16 years, in good health and fair financial circumstances, would occasionally go on a drunken carousal lasting from a night to a few days. He left home on the morning of July 3, 1928, and never returned alive. He spent the afternoon and evening of July 3d drinking and driving about Louisville in a taxicab accompanied by a woman who joined him during the day. Later in the evening he quarreled with the woman, they separated, he was driven to a garage, and the proof indicates that he spent the night there. On the 4th he rented another taxicab and drove about the city the entire day making, at intervals, at least two visits to his office. He continued to drink and spent a portion of the afternoon asleep in the car. In the evening a drinking party composed of the insured, a taxi driver, Wetzel, Mrs. Wetzel, and a Miss Smallwood, drove to a road house in Indiana where they remained until about 2 o'clock. They then returned to Wetzel's home, where they slept until morning. On July 5th the same persons drove with insured to his office, where he used the telephone, procured some money, and then the party drove to Twin Lakes, a resort near the city, where they remained until about half past 2 on the morning of July 6th, when they returned to a garage in the city where they stayed the remainder of the night. About 6 o'clock in the morning deceased telephoned his wife that he would be at home in about half an hour. However, he was then driven to his office where he procured some money and was driven by one Givens, another taxi driver, to Givens' home, where he ate breakfast, shaved, slept awhile, talked but little, and appeared to be troubled. While there he procured a loaded pistol from Mrs. Givens and retained it in spite of efforts to take it away from him. There is substantial evidence that he kept this pistol in his inside coat pocket throughout the day. About 10 o'clock he was again driven to his office, then returned to the Givens' home, had lunch, tried to drink whisky, reclined a short time upon a bed, and about 1 o'clock a party composed of the insured, a taxi driver, Givens, and his wife, and one Mrs. McCord, again drove to the office of the insured and thence to Twin Lakes. Finding nothing to drink there, insured became restless and the party soon returned to the city. Upon their way in insured insisted that he wanted beer and was told that it could be procured at the home of Mrs. McCord. It appears that she was engaged in the sale of "home-brew" and whisky. The party drove to the McCord home, the insured was given a seat in an arm chair in a corner of the living room, was given beer to drink, and was left there by the taxi driver and his wife. Soon thereafter Lizzie Moran, in an adjoining room, heard a shot, scented the odor of something burning, went to the door, saw that the insured's shirt was on fire, put the blaze out and took a pistol from his right hand. This was the same pistol he had procured from Mrs. Givens. Insured wore no vest, his coat was unbuttoned, his shirt and undershirt were both open in front, the pistol was still gripped in his right-hand inside his shirt next to the flesh. His skin appeared as if the pistol had been against the flesh when fired. The flesh was powder-burned. Insured had slumped down in the chair and was dead. The ball entered about two inches to the left of the median line and about three inches below the nipple and the point of exit was about two inches lower and four inches further to the left. No one except insured was in the room at the time he was shot. There was no indication that he was shot from the outside. The undisputed testimony is that the smoke from the shot came out of one of the windows. The insured was last seen alive by one Markwell, whom he had sent for some cigarettes about five minutes before he was shot. On two or three occasions during this continued "spree" insured telephoned home but persistently re-

fused to be taken there. He said to his companions and others that he had been drinking and was afraid to go home and that he intended to kill himself. He had asked at least four witnesses for a pistol with which to kill himself before he finally procured the revolver from Mrs. Givens.

Upon this uncontradicted testimony we think that all fair-minded jurymen must undoubtedly conclude that the insured took his life intentionally; there is no room for any inference or presumption to the contrary. Mutual Life Ins. Co. v. Gregg, 32 F.(2d) 567, 568 (C. C. A. 6); Von Crome v. Travelers' Ins. Co., 11 F.(2d) 350, 352 (C. C. A. 8); New York Life Ins. Co. v. Weaver, 8 F.(2d) 680, 682 (C. C. A. 5); New York Life Ins. Co. v. Bradshaw, 2 F.(2d) 457, 458 (C. C. A. 5).

██ The only other assigned error discussed in the brief or upon the argument is upon the admission of testimony, but no objection was made or exception taken to any portion thereof, and this assignment is therefore overruled.

Judgment affirmed.