# STEVE CLARK v. BANNER GRAIN COMPANY.[1]

June 28, 1935.

No. 30,248.

[1]Reported in 261 N. W. 596.

*Chester L. Nichols* and *Strong, Myers & Covell,* for appellant.
*Charles E. Carlson* and *Cyrus V. Hoaglund,* for respondent.

HOLT, JUSTICE.

Defendant appeals from the order denying its motion in the alternative for judgment notwithstanding the verdict or a new trial.

Plaintiff, an employe of defendant, brought the action to recover damages because of loss of health and earning power through the alleged negligence of defendant in failing to furnish him with a reasonably safe place to work. The complaint alleges that for several years prior to April, 1932, plaintiff worked in defendant's grain elevator in Minneapolis; that in the month mentioned a bin of wheat therein got overheated and caked and defendant caused an excessive quantity of chloride to be put in said wheat, which did generate excessive fumes, vapors, and other impurities in such quantities as to be irritating, obnoxious, and injurious to the health and safety of employes working in said bin; that it negligently failed to pro-

vide and maintain proper and sufficient ventilation to remove said fumes and other impurities; and that plaintiff was ordered to work in said bin to remove the heated wheat therein and while so doing, by reason of defendant's negligence, he was caused to inhale the said fumes, vapors, and impurities and because thereof became afflicted with asthma to such an extent that he is permanently disabled. The answer was a general denial, and that if plaintiff was injured such injuries were caused by his own negligence, and that he assumed the risk. After plaintiff's evidence was in defendant was permitted to amend its answer by adding this: "Alleges that if plaintiff has any claim against this defendant, he is limited to the rights and remedies provided by * * * the workmen's compensation act."

The defendant contends that it was entitled to a verdict on the ground that as a matter of law plaintiff's injuries are covered by the workmen's compensation act, first, because they were caused by an accident arising out of and in the course of his employment, or, second, they are the result of an occupational disease. It is reasonably plain that originally occupational diseases compensable under 1 Mason Minn. St. 1927, § 4327, were not compensable under § 4268. In other words, plaintiff's injuries, whatever they be, cannot be classified under both § 4268 and § 4327. And it may be said without further discussion that there is no evidence warranting a submission to the triers of fact of the question of plaintiff's injuries being the result of an occupational disease contracted in his employment. Nor did defendant ask to have any such issue submitted to the jury. In fact, the first specific claim of defendant that plaintiff's injuries might be compensable under § 4327 was on the motion for judgment notwithstanding the verdict. The medical experts seem to agree that plaintiff's disability is from bronchial asthma. In Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 201 N. W. 305, 307, it was held that neither chemical poisoning nor chronic bronchitis is included in compensable diseases under § 4327. It should follow that neither is bronchial asthma produced by chemical poisoning.

Were plaintiff's injuries accidental so as to be compensable under § 4268 and the provisions of the sections of the act in force prior to the enactment of § 4327? Section 4326(h) defines the accidental injuries covered by the act thus:

"The word 'accident' as used in the phrases 'personal injuries due to accident' or 'injuries or death caused by accident' in this act shall, unless a different meaning is clearly indicated by the context, be construed to mean an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body."

It may be conceded that if isolated expressions of plaintiff and plaintiff's medical expert most favorable to the conclusion that the injuries were accidental, within the definition just quoted, are accepted as true, there should be judgment notwithstanding the verdict. But that cannot be done. The whole evidence must be considered as it stood when the motion for a directed verdict was made. Defendant undoubtedly will in fairness admit that if the trial had been before the industrial commission, upon this same evidence, it would have vigorously contended, as it now does, that it would not justify a finding by the commission that plaintiff's disability was caused by an accident arising out of and in the course of his employment. Unless it appeared from the whole evidence as a matter of law that plaintiff's disability or loss of health resulted from an accident defined by § 4326(h), the court could not direct a verdict for defendant herein. We think upon the entire evidence herein, whether presented to a jury in an action at law or to the industrial commission in a compensation proceeding, it is for the triers of fact to determine the question whether or not plaintiff's injuries were accidental. Very many cases come close to the border line; and a reviewing court may not be in full sympathy with the findings of the triers of fact, but must nevertheless give effect thereto, when, as here, the evidence does not as a matter of law require a finding that plaintiff suffered an accident compensable under the workmen's compensation act. There are cases where, upon the evidence, it may be said as a matter of law that the remedy

for the injury is solely under the workmen's compensation act, examples of which are where the triers of fact, although finding an injury such as hernia, freezing, sunstroke, apoplexy, or rupture of blood vessels occurring while at work, erroneously refused compensation because not considered accidental—that is, there was error in applying the law; State ex rel. Rau v. District Court, 138 Minn. 250, 164 N. W. 916, L. R. A. 1918F, 918; State ex rel. Nelson v. District Court, 138 Minn. 260, 164 N. W. 917, L. R. A. 1918F, 921; Dippold v. F. B. Canada Lbr. Co. 169 Minn. 195, 210 N. W. 876; or the evidence was such that a finding of compensable injury was required, as in Klika v. Independent School Dist. 161 Minn. 461, 202 N. W. 30; Id. 166 Minn. 55, 207 N. W. 185; Grina v. Stenerson Bros. Lbr. Co. 189 Minn. 149, 248 N. W. 732. In such cases as Kallgren v. C. W. Lunquist Co. 172 Minn. 489, 216 N. W. 241, and Brajan v. Oliver I. Min. Co. 181 Minn. 296, 232 N. W. 342 (in an apoplexy and a hernia case), this court considered the issue of accidental injury was for the industrial commission.

There being a question of fact as to the plaintiff's injuries being compensable under the workmen's compensation act, the trial court properly left the matter to the jury. Donnelly v. Minneapolis Mfg. Co. 161 Minn. 240, 201 N. W. 305, contains ample demonstration that the common law and statutory remedies of an employe against his employer are intact except insofar as the workmen's compensation act covers the field, the court, upon the facts alleged in the complaint, saying [161 Minn. 245]:

"The application of our compensation law to this case, an action by an employe to recover damages for a noncompensable disease suffered because of the negligence of the employer, would take away a common law remedy without substituting anything for it and would go far to nullify the statutory duty of employers to furnish adequate ventilation."

Of course the above conclusion that the question whether the injuries for which recovery is sought come within the compensation act was for the jury does not dispose of the order denying judgment notwithstanding the verdict. The motion for a directed verdict was

also based on the ground that plaintiff had failed to prove a cause of action, that he was guilty of contributory negligence, and that he assumed the risk. The evidence bearing upon the cause of action is in dispute. This applies both to the evidence of experts and to that of lay persons. The elevator consists of 16 circular reinforced concrete bins or tanks, each 100 feet tall, holding 45,000 bushels of grain. The tanks stand in two rows. A tunnel 7 feet by 7 feet and 190 feet long runs between them. From each tank a spout or a tube opens into a conveyor in the tunnel by which the grain is carried to a boot at the end of the tunnel, and from there by conveyors to the top of the elevator, where spouts or conveyors carry it to any tank desired. Or it may be conveyed to cars to be loaded, or from cars into the elevator, or to the cleaning house. Two tanks are furnished with ventilation of some sort, and so is one end of the tunnel. Since 1925 the practice has obtained to sprinkle carbon tetrachloride in cars infected with weevils, and also in like infected tanks. This substance is in liquid form and gives off a vapor five times heavier than air. By sprinkling it on top of the grain in a car or tank the liquid and vapor tend to penetrate to the bottom. It also appears that the grain sometimes heats and cakes in the tanks. The presence of weevils tends to decompose or heat the grain, and grain heating tends to promote the increase of the weevils. The handling of grain in the tanks, in the tunnel, and conveyors raises dust. It also appears that the bottoms of the tanks are flat, and some three or four carloads must be shoveled into the spout connecting with the conveyor in the tunnel when a tank is to be emptied. If the grain heats and cakes more shoveling is required. From plaintiff's testimony the jury could find that when in April, 1932, he and three other men were set to shovel out the grain in tank 34, and when he claims to have contracted his disease, there had been 15 gallons of carbon tetrachloride poured into this tank about one week previously; that after shoveling for about half an hour plaintiff felt a burning sensation in his chest; that he spoke to the superintendent, who happened to come in, about it, and he assured plaintiff it would not harm him; that he became dizzy and sick to his stomach; that when he quit for the day he felt

sick, vomited, became drowsy; that it affected his speech; that he was a well man previous to this exposure; that despite his illness he continued at his work for about five days and then became totally disabled; that the vapor or fumes emanating from carbon tetrachloride are dangerous to health and should not be set at large except in well-ventilated rooms. Even defendant's experts conceded that in medicine as well as industry the authorities and experience are in unison that the chemical is to be handled or used only in well-ventilated rooms. The fact that its fumes or vapors at ordinary temperature destroy the weevil proves rather satisfactorily its deleterious effect on living tissue or animal life. Of course we do not overlook the evidence tending in the direction that the condition in which plaintiff is was not caused by the want of proper ventilation and the presence of this chemical, viz., plaintiff had frequently been exposed to the same fumes and lack of ventilation before without any noticeable effect; the three men who worked with him on the occasion in question were not made ill to any extent; that plaintiff had been failing for many years; the opinion of the medical experts of defendant that the bronchial asthma, from which plaintiff suffers, could not develop from the dust or chemical present at the elevator or be attributed to improper ventilation of the place where plaintiff was required to work. But we do hold that the conflict in the evidence was for the jury, and there is adequate support for the finding of negligence regarding the use of the chemical without proper ventilation and that this caused the plaintiff's disability. There is nothing in the record justifying the court in holding plaintiff guilty of contributory negligence or that he assumed the risk of injury from defendant's negligence.

There are errors assigned on rulings on evidence, on exceptions to the charge, on misconduct of counsel, and newly discovered evidence which are claimed to make for a new trial. We see nothing in the rulings on evidence of which defendant may justly complain. The court permitted evidence of the presence of dust in the tunnel and in the tanks when shoveling was in progress; that the men so engaged about their work frequently wore handkerchiefs over their mouths and noses; and that plaintiff worked a large part of the

time in the tunnel. We think all was admissible as bearing upon the charge of negligence in maintaining insufficient ventilation.

The claim is made that the court erred in not submitting the defense of contributory negligence or the assumption of the risk. We fail to find proof of either sufficient to submit to the jury. There is no evidence that plaintiff knew or appreciated the danger of being exposed to the fumes from the chemical used. He was assured by his superior that the discomfort he experienced was not dangerous. Had there been any evidence from which the jury could have found that plaintiff assumed the risk from inhaling the fumes from the chemical, we are of the opinion that the instruction would have been prejudicial that that defense was not available. It is true, if the jury predicated recovery solely upon violation of the ventilating statute (1 Mason Minn. St. 1927, § 4174) the defense of assumption of risk is not available. Suess v. Arrowhead S. P. Co. 180 Minn. 21, 230 N. W. 125. But it is not clear that the right of recovery was not also submitted under the common law rule of the duty of the master to use ordinary care in furnishing a reasonably safe place wherein the servant works, in which case assumption of risk is a defense. Wickstrom v. Thornton Bros. Co. 191 Minn. 327, 254 N. W. 1. Even so, we think the assumption of risk was not made an issue by the evidence, because, as above stated, plaintiff is not shown to have had any knowledge or appreciation of danger lurking in the fumes from tetrachloride where there was lack of proper ventilation. So no error is perceived from not submitting the defense of contributory negligence and charging that assumption of risk was not available to defendant, since, in any event, the evidence did not warrant its submission.

The charge is also challenged in that it did not explain the meaning of "accident" or "accidental injuries" in the compensation act further than reading the definition contained therein, and that the court did not explain the word "practicable" as used in § 4174 of the Code. It is enough to say the language is so plain and simple in both sections that it is doubtful whether any attempt further to elucidate the meaning would be of aid to the jury; and, further, we find no request for instructions in the record. It is also claimed

that it was prejudicial error to submit the conditions in the tunnel as part of the conditions in the bin or tank. When the grain in a tank is being emptied the dust and fumes thereof are drawn into the conveyor in the tunnel, whether it flows by its own gravity or by shoveling. But when shoveling is going on, the spout to the conveyor is not always flowing full, and chance is afforded for the fumes and dust in the tunnel to ascend into the tank. Furthermore, we are of opinion that the tanks, the tunnel, the cleaning and elevating rooms, in fact everything connected with the plant and around and within which the men were required to work, should be considered as their workshop. A tank cannot be viewed as a separate room. It is part of a complete plant for the handling and storing of grain. The workmen in this plant spent a great portion of their time in the tunnel, and grain in cars treated with this chemical was carried by the conveyors into the elevator tanks. The dust naturally arising from the handling of grain must conceivably be impregnated with any fumes present from the chemical used. We think the trial court rightly instructed in respect to the presence of dust because of lack of ventilation. There was evidence authorizing the jury to determine the practicability of ventilating all the tanks and tunnel properly from the fact that two tanks were provided therewith, and no attempt to show that such ventilation of all was not as practicable or that the ventilation in the two was not efficient. There also was testimony that it was practicable to ventilate the tunnel. That there was not adequate ventilation is demonstrated by the fact that the men often worked with handkerchiefs over nose and mouth.

It is also contended that grain elevators do not come within § 4174, which relates to factories and workrooms therein, and a grain elevator tank is not a workroom. L. 1919, c. 491, of which § 4174 is a part (§ 4), is broad in scope as disclosed by its title, part of which reads:

"An act to promote the health and safety of employes in all places of employment, both inside and outside, by requiring the owners of such places, and, in certain cases, the owners of buildings and

grounds in or on which such places are located, to keep them in good sanitary condition; to require proper and adequate ventilation in such places," etc.

And § 1 thereof reads:

"The term 'all places of employment' as used in this act shall mean any place, either inside or outside, where any business or industry is carried on and in which persons are employed and shall include factories, mills, workshops, * * * offices and office buildings, * * * public utilities, engineering works, the erection of buildings, and yards; but shall not be construed to apply to domestic service or agricultural labor."

We do not think the modern grain elevator plant can be excluded from the ventilating provision of § 4 thereof (§ 4174 of the statutes).

Exception is also taken to that part of the charge which states that asthma or poison from tetrachloride or both are not occupational diseases covered by § 4327, but if such diseases resulted from accidental injury within § 4268 they are compensable under the workmen's compensation act, and no recovery could be had in this action. We think the instruction correct, and certainly it accords with the theory on which the action was defended.

Other exceptions to the charge, which was clear and succinct, have been examined but are not deemed prejudicial, nor of sufficient merit to be here noted.

Misconduct of counsel in his final address to the jury was excepted to; but, when defendant's objection to its tenor brought the court's warning that he was approaching forbidden ground, counsel refrained. All display of learning and forensic ability cannot well be denied counsel in a jury trial.

A new trial is also asked on the ground of newly discovered evidence. Aside from the proposition that the affidavits from the experts cannot be classed as newly discovered evidence, the refusing of a new trial on this ground is largely left to the judicial discretion of the trial court. There was no abuse of that discretion here.

The order is affirmed.