## GLOBE INDEMNITY CO. OF NEW YORK v. BANNER GRAIN CO.
### No. 10831.

Circuit Court of Appeals, Eighth Circuit.
June 12, 1937.

Rehearing Denied July 12, 1937.

---

Claude G. Krause, of Minneapolis, Minn. (George Hoke and Frank H. Durham, both of Minneapolis, Minn., on the brief), for appellant.

Chester L. Nichols, of Minneapolis, Minn. (Gerald T. Mullin and Patrick L. Farnand, both of Minneapolis, Minn., on the brief), for appellee.

Before GARDNER, WOODROUGH, and BOOTH, Circuit Judges.

BOOTH, Circuit Judge.

This was an action at law for breach of a standard workmen's compensation and employers' liability policy brought by the Banner Grain Company against the Globe Indemnity Company. It is a so-called "liability over" case.

The Banner Grain Company will be hereinafter called the "Employer," and the Globe Indemnity Company will be hereinafter called the "Insurance Company."

The action was commenced in the state court, and duly removed to the federal court on the ground of diversity of citizenship.

It was tried to the court, a jury being duly waived.

The facts are substantially as follows: On or about August 1, 1931, the said parties entered into an agreement wherein the Insurance Company agreed to insure the Employer for one year under a standard workmen's compensation and employers' liability policy against loss by the Employer on account of injuries sustained by any of its employees, within the terms of the policy.

Said contract of insurance contained, among other provisions, the following:

"I. (a) To Pay Promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due.

"(1) To such person because of the obligation for compensation for any such injury imposed upon or accepted by this Employer under such of certain statutes, as may be applicable thereto, cited and described in an endorsement attached to this Policy, each of which statutes is herein referred to as the Workmen's Compensation Law, and

"(2) For the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law. * * *

"I. (b) To Indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of said employees as are legally employed wherever such injuries may be sustained. * * *

"VIII. This agreement shall apply only to such injuries so sustained by reason of accidents occurring during the Policy Period limited and defined as such in Item 2 of said Declarations. * * *

"Declarations.

"Item 2. The period during which the Policy shall remain in force, unless cancelled as in the Policy provided (herein called the Policy Period), shall be from August 1st, 1931, to August 1, 1932, at twelve and one minute o'clock a. m., standard time, as to each of said dates at the place where any operation covered hereby is conducted, as respects that operation, or at the place where any injury covered hereby is sustained, as respects that injury."

The Workmen's Compensation Law included in the indorsement, above referred to, was that of Minnesota (Mason's Minn. St.1927, § 4261 et seq. as amended).

While said policy was in force, and on or about April 28, 1932, one of said Employer's employees, Steve Clark, sustained personal injuries while in the line of his duty. He brought suit against the Employer in the state district court of Minnesota in April, 1933, to recover damages for $15,000.

The Clark Action in the State Court.

The Employer turned over the summons and complaint in said action to the Insur-

ance Company, and advised said Insurance Company that it would look to it to investigate said claim, defend it, and pay the judgment, if any, under the provisions of its insurance policy.

Thereafter, the Insurance Company informed the Employer that it had investigated said cause of action brought by Clark, that his injuries were not covered by said policy, and that the Insurance Company would and did deny liability thereunder; but it agreed to defend the action provided the Employer would sign a "Non-Waiver Agreement" (Exhibit "C"), which waiver was signed by the Employer, and which left open for future consideration the question of whether or not the said liability was covered by the policy. The Insurance Company, through its legal department, then undertook to defend said action in the district court of Hennepin county, its attorneys being assisted therein by counsel furnished by the Employer.

On the trial of the case, a verdict was rendered against the Employer in favor of Steve Clark for $15,000.

Thereafter, on April 10, 1934, F. H. Durham, the attorney for the Insurance Company, wrote the following letter to the Employer:

"Confirming telephone conversation, my client, the Globe Indemnity Company, feels that it has carried out its agreement to give the Banner Grain Company a complimentary defense as per the written reservation of rights entered into between the parties under date of April 22, 1933.

"They further take the position that they cannot take any further part in the above case or permit me, as their attorney, to assist you except upon a further written stipulation that the Globe Indemnity Company will not furnish an appeal bond, and furthermore, that its policy of insurance does not cover plaintiff's (Clark's) case as alleged in the complaint and proven on the trial of the case."

The Employer refused to stipulate with the Insurance Company according to the terms of said letter, and the Insurance Company thereupon withdrew from the Clark litigation. The Employer then employed other counsel, who made a motion for judgment notwithstanding the verdict or for a new trial. Upon the denial of that motion, they took an appeal to the Minnesota Supreme Court, which affirmed the district court. Clark v. Banner Grain Co., 195 Minn. 44, 261 N.W. 596.

The Employer paid the Clark judgment against it, and seeks recovery in the case at bar of $19,332.15, the amount of said judgment plus costs, disbursements, and interest.

As above stated, the case at bar, originally commenced in the state court, was removed to the federal court on account of diversity of citizenship.

A somewhat more extended study of the Clark Case in the state court will be helpful in an understanding of the case at bar.

The complaint of Clark alleged negligence on the part of the Employer, and sought to recover at common law for damages for disease on account of failure to furnish a reasonably safe place in which to work.

The Employer answered, denying the allegations of the complaint and alleging negligence of Clark and assumption of risk. On the trial, the Employer amended its answer by adding the following paragraph: "Alleges that if plaintiff has any claim against this defendant, he is limited to the rights and remedies provided by the provisions of Part 2 of Chapter 23A, General Statutes of Minnesota, 1923, and Acts amendatory thereof, commonly known as the Workmen's Compensation Act."

The issue of defendant's negligence was submitted upon both the question of the common-law duty to furnish a safe place for working, and the question of violation of a statutory requirement for adequate ventilation; also upon the issue relative to the Workmen's Compensation Act.

From the evidence submitted in the trial of the Clark Case, the following facts were shown: The Employer, Banner Grain Company, is engaged in the grain business and owns a large terminal elevator in Minneapolis for the holding, storing, and cleaning of grain. Said elevator consists of a number of cylindrical grain tanks or bins placed in a row, each being about 100 feet high, 32 feet in diameter, and having a capacity of 45,000 bushels of wheat. There is a tunnel underneath the tanks, in which is a grain belt, terminating in certain machinery designed and intended to catch the grain from the belt and distribute it as desired. In the bottom of each of said grain tanks is a spout through which the grain may be passed to the belt.

In the handling and storing of wheat, it sometimes becomes infested with weevils, and it is necessary to fumigate the wheat

with carbon tetrachloride. This liquid is poured on the wheat from the top, and, being heavier than air, passes through the wheat to the bottom and kills the weevils.

In April, 1932, and for some time previous, Steve Clark was employed by the Grain Company as a foreman in and about its grain elevator; at said time the Employer learned that the grain in tank 34 was infested with weevils, and caused about 15 gallons of carbon tetrachloride to be poured over said wheat. About ten days later, the wheat was emptied out of the said tank through the spout in the bottom. However, as the tank had a flat concrete floor, there was a comparatively small amount of grain left in the bottom of the tank which had not run out through the spout, and it was necessary for Steve Clark and three other men to enter the tank and shovel out the grain. This was a customary procedure. There was testimony introduced that there was not as much ventilation in tank 34 as in two other tanks of the same company, and in the tanks and tunnel of elevator "K" belonging to another company. Clark and the other men entered tank 34 in the morning and remained there for six hours. It was a hot day, and the temperature in the tank was about 100 degrees above zero. There was a great deal of dust in the tank and from the tunnel, and Clark testified that the fumes from the carbon tetrachloride were very strong.

About a half hour after Clark commenced working in the tank, he felt a burning sensation in his chest and became afflicted with asthma. He spoke to the superintendent about it, and the superintendent assured him that it wouldn't bother him.

After Clark finished his work in said tank, he became nauseated. He continued to work for the Employer for another week; then he began to suffer from headaches, drowsiness, shortness of breath, and severe coughing, and he was compelled to quit work. He spent three months in the Veterans' Hospital, but lost about thirty-five pounds in weight and still continued to suffer from asthma. At the time of the trial, it was claimed that he was permanently and totally disabled.

Clark had worked in grain elevators for a number of years and had been employed by the Banner Grain Company for three years. He offered testimony to the effect that he had been in good physical health until the date he became afflicted with tetrachloride poisoning, resulting in asthma or asthmatic bronchitis.

The Employer offered testimony to the effect that Clark had not been in good health for a number of years, coughed a great deal, and was in a weakened condition at least six or eight months before he quit work.

Clark had at no previous time, while engaged in shoveling out tanks or working in the tunnel, received any known injuries from the inhalation of carbon tetrachloride fumes.

None of the other men who were with Clark in tank 34 suffered any bad effects therefrom.

The opinions of the medical experts differed very widely as to the nature and cause of Clark's symptoms and disability. His own expert witness, Dr. Harbo, said that Clark suffered from the poisonous effects of carbon tetrachloride, resulting from the breaking down of that chemical into other substances, such as hydrochloric acid, chlorine gas, etc., and that the "burning sensation" described by Clark was caused by a "chemical burning" of the bronchial and lining tissues from the effects of tetrachloride; that Clark's asthmatic condition came from such chemical burn.

The medical experts and chemists who testified for the Employer said that tetrachloride would not "break down" when inhaled; that Clark's symptoms could not have been caused by the tetrachloride, but came from a sinus inflammation or heat stroke.

The report of the injuries made by the Employer to the Industrial Commission read as follows: "His condition was due to grain dust poisoning, account poor health past three months."

The state district court instructed the jury that, if the jury found negligence which "proximately caused in plaintiff carbon tetrachloride poisoning or the disease known as asthma, or both such poisoning and such disease," the Employer would be liable, unless the jury found that said conditions were due to an accident within the definition of the Compensation Act.

The court further instructed the jury that neither asthma nor tetrachloride poisoning was included in the statutory list of occupational diseases, but nevertheless, as to a disease not so enumerated, the employee's remedy was under the Compensation Act if the disease was caused by ac-

778

cident as therein defined. Said definition of accident was given by the court to the jury, and reads as follows: "An unexpected and unforeseen event happening suddenly and violently, with or without human fault, producing at the time injury to the physical structure of the body."

The verdict of the jury apparently involved a holding that the happening of the injury to Clark was not an accident within the meaning of the Workmen's Compensation Law of Minnesota. It did not involve a holding that the happening of the injury to Clark was not an accident within the policy of insurance issued by the defendant in the case at bar.

The Minnesota Supreme Court in its opinion classified Clark's action as one for "loss of health," and held that no case was made by defendant that his injuries resulted from an occupational disease named in the Workmen's Compensation Act as compensable; and further held that the question of whether or not Clark's injuries were accidental within the meaning of the Compensation Act was a question of fact and properly submitted to the jury. The order of the trial court was affirmed.

The Trial Record in the Case at Bar.

The original complaint filed in the case at bar apparently sought recovery from the Insurance Company upon two main grounds:

(1) Complete and unlimited coverage of the insurance policy.

(2) Negligence of counsel for the Insurance Company in defending the Clark Case in the state district court.

A third ground was also presented to the trial court on oral argument, although it was only vaguely referred to in paragraph XVII of the complaint, namely:

(3) That the carbon tetrachloride poisoning which Clark suffered was an accident within the meaning of the insurance policy, although it was not held to be an accident under the Minnesota Workmen's Compensation Act.

The Insurance Company interposed an answer, denying unlimited coverage of the insurance policy; denying negligence of its counsel in defending the Clark Case, and alleging that an attorney employed by the Banner Grain Company was associated with counsel for the Insurance Company, and that he acquiesced in all of the Clark proceedings.

After the plaintiff Employer had interposed a reply, the Insurance Company made a motion to strike certain portions of the Employer's complaint and for judgment on the pleadings, and an alternative motion to make the complaint more definite and certain. This motion was denied by the court because the Employer-plaintiff desired to file an amended complaint.

In its opinion on the denial of said motion, the court indicated that plaintiff Employer was not entitled to any relief by reason of the alleged negligence of counsel of the Insurance Company.

Plaintiff Employer petitioned the court for a construction of the insurance contract under the Federal Declaratory Judgment Act (Jud.Code § 274d, 28 U.S.C.A. § 400) as to whether said policy limited the insurer's liability to personal injuries of accidental origin.

The court made an order granting to a certain extent said petition for construction of the insurance contract and holding that, so far as said policy related to liability other than under the Workmen's Compensation Law, it was restricted to liability for personal injuries by reason of *accidents* occurring during the policy period.

Plaintiff Employer then filed an amended complaint, omitting the allegation of negligence of counsel for the Insurance Company in the Clark Case. The amended complaint alleged that the judgment in the state court was res adjudicata between the parties in this action.

The amended complaint further alleged that the manner of the happening of Clark's injuries was an accident within the meaning and provisions of the insurance policy, and that a denial of liability thereunder constituted a breach of said contract.

Defendant, Insurance Company, interposed its answer to the amended complaint, alleging that it was duly adjudicated in the Clark Case that Clark's personal injuries were not sustained by reason of an accident; and further alleging that it was thereby necessarily determined by the jury that Clark's injuries were proximately caused by and due to sickness or disease occasioned by the negligence of the Employer; and alleging that the Employer is now estopped to assert the cause of action contained in its amended complaint.

At the trial of the case at bar, the record in the Clark Case was received in

evidence "for any purpose that may be appropriate or material to the issues in this case." The following took place:

"Mr. Hoke: Defendant objects to the introduction of any evidence under the complaint on the ground that it does not state a cause of action.

"The Court: The motion will be denied, and an exception by the defendant to this ruling is noted by defendant and allowed by the Court.

"Mr. Nichols: May it please the Court, I understand it may be stipulated in this case that the printed record in Case Number 30248, in the Supreme Court of the State of Minnesota, being Steve Clark v. Banner Grain Company [195 Minn. 44, 261 N.W. 596], this plaintiff, which has heretofore been attached as an exhibit, and marked Exhibit B to the original complaint in this action, may be received in evidence in this case with like force and effect as if the witnesses had appeared and testified in open court here on all matters material to the issues in this case now on trial, including the question or questions of res adjudicata.

"Mr. Hoke: Well, I am not sure that it makes any difference, but I do not feel inclined to stipulate that this record may be treated with the same force and effect as if the individual witnesses appeared here and testified, because our position is that the record is admissible only for the purpose of ascertaining whether or not the verdict rests upon sufficient foundation, and it is not admissible with the effect that you state, to-wit, as if the witnesses were present and gave anew the testimony contained in the record. I am not sure that it makes any difference, but I want to avoid any misunderstanding on that proposition.

"Mr. Nichols: Do I understand, Mr. Hoke, that you are willing that this record be received without objection by this Court, to be used by this Court in determining the issues which are now before this Court in this case, including the question of res adjudicata.

"The Court: Well, the record may go in evidence for any purpose that is appropriate.

"Mr. Nichols: And material under the issues before the Court.

"Mr. Hoke: Well, I suppose 'appropriate' includes the idea of 'material' under Judge Nordbye's decision, which is that the only question to be inquired into is whether or not you can prove that the liability imposed upon you by law in the Steve Clark Case, is one that we are obligated to you under our contract, that is, to indemnify you against, so I will make my concession broader, that is, I am willing that the record may be received in evidence for any purpose that may be appropriate.

"Mr. Nichols: Will you sufficiently define the word 'appropriate' to say that it includes anything which is material under the issues in this case?

"Mr. Hoke: Yes, appropriate and material to the issues in this case.

"The Court: Very well. It may be received.

"The record so received in evidence was and is a copy of the printed record in the case of Steve Clark v. Banner Grain Company [195 Minn. 44, 261 N.W. 596], in cause number 30248 in the Supreme Court of the State of Minnesota. That record was attached to the original complaint in this cause as Exhibit 'B', and constitutes a part of defendant's answer (pleaded by reference to said Exhibit 'B') to the amended complaint herein."

The understanding of the counsel for the Insurance Company of the effect of this introduction of the record in the Clark Case may be gathered from the motion made at the close of the testimony wherein counsel said:

"* * * the defendant moves the Court to find in its favor and direct the entry of judgment herein and that the plaintiff take nothing by this action, but that the defendant recover from the plaintiff its costs and disbursements herein, such motion being upon the ground *that upon all the evidence in the entire record herein it conclusively appears* that plaintiff is not entitled to recover against the defendant in any sum whatsoever." (Italics supplied.)

And again, from the findings proposed by defendant before final submission of the case at bar, as follows:

"V. That on or about April 19th, 1933, said Steve Clark instituted an action in the District Court of Hennepin County, Minnesota, against the Banner Grain Company (the plaintiff herein) and that thereupon and thereafter proceedings were had in said court in said cause, as set forth in Exhibit 'B' of the original complaint in this cause, which said exhibit is made a part

of defendant's answer in this cause. * * *

"VIII. That *it affirmatively appears* that the liability imposed upon plaintiff in said action *was not imposed* upon plaintiff by law *for damages* on account of injuries sustained by said Steve Clark *by reason of an accident.*" (Italics supplied.)

It must be remembered that the only evidence offered and received as to how the injuries were received by Clark was contained in the Clark record made in the state court.

The understanding of the trial court in the case at bar as to the introduction of the Clark record is shown by the remarks made in the memorandum attached to the findings:

"It was stipulated between the parties at the trial herein that the record in the Clark Case should be received in evidence in so far as it was appropriate and material to the issues presented herein. The Court understands that it was the intention of the parties to submit on this record the question as to what issues are res adjudicata as between the parties hereto, and further, on the evidence in the record submitted, the Court should determine the other issues submitted by the pleadings, save and except the expenses and costs which plaintiff claims to have incurred in defending the Clark Case and in prosecuting the appeal therein. It is the Court's opinion that, in determining defendant's liability as an indemnitor the only fact issue which remains to be decided is whether the happening to Clark, which was the basis for the verdict against the plaintiff, was an accident within the meaning of the insurance policy. * * *

"Certainly, there is ample evidence on the record submitted to support the finding of this Court that Clark's injury was caused by tetrachloride poisoning, and that such injury was caused by a mishap that may fairly be termed an accident within the meaning of the policy."

The only evidence submitted in the case at bar, in addition to the Clark proceedings in the state court, was as to the amounts paid by the Employer in satisfaction of the Clark judgment, costs, attorneys' fees, etc., and no question is raised on this appeal as to the correctness of said amounts.

At the close of all the evidence, both parties moved for judgment, and defendant Insurance Company submitted requested findings of fact and conclusions of law. These requested findings and conclusions were refused, and exception noted.

The court made findings of fact, conclusions of law, and order for judgment in favor of plaintiff Employer, from which the defendant Insurance Company brings this appeal.

The court based its findings upon the proceedings in the Clark Case, and set forth the circumstances under which Clark sustained injuries, the nature and extent of the injuries, and held that the manner in which they were sustained constituted an accident within the policy. The court further found:

"XXVIII. That the failure of the defendant to unreservedly and without qualification assume the defense of the suit in the state court, in which Steve Clark sought to recover for his injuries, constituted a breach of the contract and agreement between the parties hereto."

The court further found that the withdrawal by the Insurance Company from the Clark Case after the verdict was rendered, and the refusal to pay the judgment, also constituted a breach of the contract.

The court further found:

"XXV. That the injuries received by said Steve Clark from inhaling the said fumes of carbontetrachloride were wholly unforeseen, occurred without the will or design of said Steve Clark, were unexpected, were unusual, was an undesigned occurrence and an unprecedented consequence of the inhalation of such fumes in such industry and a mishap not to be anticipated and wholly unexpected.

"XXVI. That the circumstances under which said Steve Clark became injured on April 28th, 1932, hereinbefore related, and the manner thereof constituted and were an accident within the meaning of the contract of insurance, Exhibit 'A'.

"XXVII. That the verdict rendered against this plaintiff in behalf of said Steve Clark, hereinbefore referred to, which plaintiff was required to pay constituted a loss to this plaintiff by reason of the liability imposed upon it by law for damages on account of personal injuries accidentally sustained to said employee, Steve Clark, while he was legally employed within the territorial limits of the United States of America. * * *

"XXXIII. That in the trial of the said Clark case in the state court, the jury, in finding for the plaintiff, necessarily found and determined under the instructions of the court that the manner of the happening of the disability was not and did not constitute an accident within the meaning of the Minnesota Workmen's Compensation Act, and such finding is res adjudicata upon the parties hereto that the injuries received by Clark were not compensable under said Workmen's Compensation Act. But in finding for plaintiff, said jury did not and could not have determined under the issues submitted to it whether the injuries to Clark constituted an accident within the meaning of the insurance contract, and the verdict and finding of the jury therein is not res adjudicata as to whether the happening to Clark was an accident within the unrestricted and unlimited definition of the term 'accident' as used in said policy of insurance."

In the memorandum filed with the findings, the court said:

"That the tetrachloride poisoning of Clark was a mishap that was unexpected and unforeseen seems clear, and it is fair to assume that the jury found that, by its insidious attack upon the membrane and lining of Clark's lung, and the time that elapsed before any injury resulted, the happening to Clark was distinguished from the occurrence contemplated by the definition in the Minnesota Workmen's Compensation Act. * * * the jury, under the evidence, concluded that the happening to Clark was not an accident that occurred suddenly and violently, and which produced at the time injury to the physical structure of the body, all of which is contemplated by the definition of accident in the Workmen's Compensation Act. * * * However, the jury's verdict in the Clark case must be limited to a finding that the happening resulting in an injury to Clark was not an accident as defined under the Workmen's Compensation Act, and such finding of the jury cannot be extended or enlarged to a finding that the occurrence was not an accident within the unrestricted and unlimited definition of the term 'accident' as it appears in the contract of insurance that was entered into between the parties."

Appellant on this appeal contends that the plaintiff Employer was required in the case at bar to prove affirmatively that the liability imposed in the Clark Case rested upon a finding of personal injuries sustained by reason of accident; and to exclude any hypothesis that the liability may have rested upon a finding of ill health resulting from negligence, citing the case of B. Roth Tool Co. v. New Amsterdam Cas. Co., 161 F. 709, 711 (C.C.A.8), the opinion in which reads in part as follows: "It is a well-settled general rule that, when one who has a right to recover over is sued, the judgment regularly rendered against him is conclusive upon the person liable over, provided notice of the suit be given to the latter and full opportunity afforded him to make defense. But, when the liability over is not as broad as the original liability, the plaintiff in the suit to recover over if he relies on the adjudication made in the former case must show that the very ground of liability against the indemnitor was found to exist and was necessarily adjudicated in the original suit."

Appellant further contends that the finding of the trial court that Clark's injuries in reality resulted from accident was wholly immaterial and insufficient to support the decree, and wholly unsupported by any evidence.

Appellant further contends that the finding of the trial court that liability was imposed in the Clark Case without a decision therein as to accidental origin of the injuries required judgment for the Insurance Company in the case at bar.

Appellant contends that the vital question in the case at bar concerns alone the basis upon which the Clark jury imposed the liability; that the Insurance Company promised to indemnify only for liability imposed on the basis of accident; and, as the court below found that the liability in the Clark Case was not so imposed, that alone requires judgment herein for the Insurance Company.

Appellant further contends that the evidence in the case at bar, which consists mainly of the Clark Case record, does not sustain the Employer's burden of proof; that the Clark record affirmatively disposed of the issues adversely to the plaintiff Employer herein, said Clark record showing that the liability was imposed upon the basis of illness only.

Appellee contends that it alleged and proved by a fair preponderance of the testimony, and the lower court so found, that Clark sustained personal injuries by reason of accident occurring during the policy

period, which resulted directly and proximately in asthma or asthmatic bronchitis; that the word "accident" when used without restriction or qualification in indemnity agreements, insurance contracts and generally in the law, has a well-defined meaning; that the restricted definition of accident in the Workmen's Compensation Act to an event happening suddenly and violently is not as broad as the general meaning of "accident" as used in indemnity and insurance contracts.

Appellee further contends that in the Clark Case appellant contended that Clark's injuries constituted an accident within the meaning of the Workmen's Compensation Act; that the jury in fact found that the injuries were received by the inhalation of poisonous fumes of carbon tetrachloride, and that they resulted directly and proximately in Clark's condition; that there was no evidence to support any other theory; that there could have been no verdict in the Clark Case without evidence to sustain it, and there was no evidence in that case to sustain any verdict except the one based upon poisoning by fumes of carbon tetrachloride, and the Minnesota Supreme Court sustained the verdict upon that ground and no other, such finding being res adjudicata in the case at bar.

Appellee further contends that the fact that the state court jury was not called upon to decide whether Clark sustained an accident within the meaning of the policy of insurance would not defeat the Employer's right to recover here; that said question could not properly be decided and was not an issue in the Clark Case, but was an issue in the court below and was rightly determined therein.

Appellee further contends that appellant has waived its right to object to the use of the Clark record as evidence in determining all the issues in the case at bar.

The two matters which are most strongly pressed by the appellant are:

(1) That the Clark record in the state court was used as evidence improperly at the trial in the federal District Court; and (2) that there was no evidence to show that the occurrence which resulted in injury to Clark was within the terms of the policy of the Globe Indemnity Company.

We think the trial court was justified in considering the Clark record which had been made in the state court and that the conclusions drawn by the trial court were correct.

The circumstances surrounding the introduction in the case at bar of the Clark record made in the state court, and the subsequent action of counsel for defendant Insurance Company relative thereto, as heretofore outlined, fully justified the court, and counsel for the plaintiff Employer, in believing and in acting on the belief that the Clark record was properly in evidence for the purpose, among other things, of determining whether or not the happening of the injury to Clark was accidental. In his memorandum attached to his findings, the trial judge says:

"The Court understands that it was the intention of the parties to submit on this record the question as to what issues are res adjudicata as between the parties hereto, and further, on the evidence in the record submitted, the Court should determine the other issues submitted by the pleadings, save and except the expenses and costs which plaintiff claims to have incurred in defending the Clark Case and in prosecuting the appeal therein."

"* * * the only fact issue which remains to be decided is whether the happening to Clark, which was the basis for the verdict against the plaintiff, was an accident within the meaning of the insurance policy."

Further: "Certainly, there is ample evidence on the record submitted to support the finding of this Court that Clark's injury was caused by tetrachloride poisoning, and that such injury was caused by a mishap that may fairly be termed an accident within the meaning of the policy."

The issue of accident, quite apart from the Workmen's Compensation Act, was in the case, set up by the pleadings.

Accident, apart from the Workmen's Compensation Act, was covered by the policy of indemnity insurance—so held by the trial court.

It seems very clear that counsel for the Employer proceeded on the belief that the Clark record contained evidence relevant to this issue of accident and that the Clark record was in evidence by consent.

The receiving in evidence of the Clark record was not a violation of the statute (title 28 U.S.C.A. § 635) providing that the mode of proof in the trial of actions at common law shall be by oral testimony and examination of witnesses in

open court, etc. The statute could be and was waived by the Insurance Company. Proctor v. Preferred Acc. Ins. Co. (C.C. A.) 51 F.(2d) 15.

The word "accident" is used in the Minnesota Workmen's Compensation Act with a restricted meaning. See Costly v. City of Eveleth, 173 Minn. 564, 218 N.W. 126. The usual meaning of the word is broader. See United States Mutual Acc. Ass'n v. Barry, 131 U.S. 100, 9 S.Ct. 755, 33 L.Ed. 60. Negligence is not necessarily excluded. See Standard Oil Co. v. United States (C.C.A.) 264 F. 66, 12 A.L.R. 1404; Block v. St. Louis, I. M. & S. Ry. Co. (C. C.A.) 230 F. 113; Miller v. United States F. & Cas. Co. (Mass.) 197 N.E. 75; Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A.L.R. 363.

We think the trial court rightly held that the word "accident" in the insurance policy carried the broader meaning.

In view of the foregoing we are in agreement with the findings of the court below and think the judgment should be affirmed.

It is so ordered.