# N. J. WILKINS v. BEN'S HOME OIL COMPANY AND ANOTHER.[1]

January 22, 1926.

No. 24,959.

**When injury is compensable under compensation act, even if employe had predisposing weakness to it.**

1. If an unforeseen accident to an employe, while engaged in the performance of his work, directly causes an injury to the physical structure of his body, the injury is compensable under the Workmen's Compensation Act, even though the employe had a natural weakness predisposing him to such an injury.

**Compensation governed by evidence in each case, not by preconceived medical theory.**

2. Compensation under the act is not to be governed by preconceived medical theories, but by the evidence adduced in the particular case interpreted according to the letter and spirit of the compensation act.

**Evidence compelled finding that employe received a hernia from accident.**

3. The evidence in this case compels a finding that the employe received a hernia, being an injury to the physical structure of his body, from an accident arising out of and in the course of his employment.

Workmen's Compensation Acts, C. J. pp. 68 n. 42; 69 n. 47; 115 n. 37; 116 n. 45 New.

Upon the relation of N. J. Wilkins the supreme court granted its writ of certiorari directed to the Industrial Commission to review its decision affirming the findings of the referee denying compensation in a proceeding under the Workmen's Compensation Act. Reversed.

*F. L. & E. V. Cliff,* for relator.

*A. R. French* and *J. F. Boyles,* for respondents.

[1]Reported in 207 N. W. 183.

HOLT, J.

By the decision of the Industrial Commission N. J. Wilkins was denied compensation for hernia claimed to have been received through an accidental injury in the course of his employment as a servant of Ben's Home Oil Company. The matter is on certiorari presented for review in this court.

N. J. Wilkins was employed about a filling station in Ortonville, Minnesota. Lubricating oil in a metal drum or barrel was to be unloaded from a truck at the station. It was heavy, weighing about 450 pounds. Wilkins went to the driver's assistance. Whether they undertook to slide or tip the barrel off is not made clear. He testified:

"I came up to take hold of the barrel, took hold of the upper edge of the chime with my left hand and I was practically in front of the barrel and it slipped and came down. In some manner I got out from under, I struck my head against the barrel when it came down, it came down hard enough to burst the barrel." His companion testified: "He was in front of it, he had hold of the upper edge of the barrel and about that time the barrel slipped. He had hold of one end and it threw the full weight of the barrel on him and at the time he was trying to get another hold on it, the barrel was rather heavy and it practically threw the whole weight of 450 pounds on Mr. Wilkins."

The evidence is that Mr. Wilkins experienced a catch or pain in the lower part of the abdomen; that he emptied the oil from the broken barrel into another barrel located 20 to 25 feet away, using a 5-gallon pail; that he felt a "tapping" but no pain while so doing, but that, when he went to move the barrel he had filled, such a severe pain was felt that he had to desist and could work no more that day. He immediately sought a doctor, but found none until the next morning when he was informed that he had a right inguinal hernia, for which he was operated 2 days later.

Dr. Bolsta, a physician and surgeon of 30 years' active practice, testified that the hernia was a recent one. And when asked for an

opinion as to its cause said he had no doubt that the accident caused a tearing of the muscles permitting that hernia to protrude. Another doctor, who had made a physical examination of Mr. Wilkins 2 years before, preparatory to his entering the employ of the Standard Oil Company, testified that he then found no indications of hernia or weakness showing a tendency to hernia, for which condition he was particularly on the lookout. He was present at the operation and saw no sign of an old hernia, and also gave the opinion that the direct strain when the barrel slipped from Mr. Wilkins' hold caused the injury.

A surgeon and physician called by respondents, who had made no examination of plaintiff, on being asked a hypothetical question as to this accident causing the hernia, stated:

"That this man's condition was a congenital, pre-existing, potential hernia," and that "the basis for the opinion is this: That there is no history of any direct violence received during the course of his employment producing any particular objective trauma to the site of the alleged injury. There is no evidence of ecchymosis, no history of a blow to that particular point and there is no history of vomiting or nausea," or of immediate disability. And, in giving the causes of hernia from experience and study of textbooks, he said: "Well, there are various causes, of course, coughing, straining at stool, various things of that kind, direct blows, crushing injuries and *any particular condition causing intra-abdominal pressure.*"

We have italicised the last six words which to our minds plainly support the conclusion of the doctors who testified for Mr. Wilkins, viz., that the wrench or strain, experienced when the heavy barrel slipped from his grasp, caused an intra-abdominal pressure which produced the hernia. True, the doctor also gave the opinion that, granting Mr. Wilkins had a weakness predisposing toward hernia, the strain did not produce a sudden hernia, because "you must have direct violence to the site of the injury severe enough to produce objective symptoms such as ecchymosis, vomiting, prostration, shock, immediate disability." Dr. Bolsta denied that medical authorities were in accord that intra-abdominal pressure could not cause hernia.

We think the triers of fact, who fail to find on such evidence as presented by this record that the accident to Wilkins did cause his hernia, must have proceeded upon an erroneous theory concerning the proof of such injury, in that they accept as an indisputable medical fact that it is impossible that an accident can produce an inguinal hernia unless there is inflicted an external blow sufficient to rupture the tissues, leaving some visible indications thereof, or else producing such immediate prostration and acute pain as to amount to objective symptoms.   This conception is based on some medical theory that hernia is a gradual development of a congenital weakness or defect.   The Workmen's Compensation Law makes no distinction between those physically perfect and those having some structural weakness liable to injury from some unexpected sudden accident.   The definition given by the statute of compensable accidental injuries is this:   "An unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body." G. S. 1923, § 4326(h).   If the sudden strain from an accident forces the bowel through the inguinal ring, there is an injury to the physical structure of the body which might never have materialized but for the accident, even though there was always present the possibility for such obtrusion from such accident in that person, which is not present in the great majority of men, because of the normal size of their inguinal rings or the greater strength in them of the surrounding tissues or muscles.   That the obtrusion is an injury to the physical structure of the body cannot well be denied. Once through it cannot be repressed to stay, except by operation or some mechanical contrivance such as a truss, and then only as long as it is so kept in place.   Here the accident was so closely connected with the appearance of the obtrusion of the bowel, the pain and the incapacity to work that there is no room for finding the hernia not to have been the result.

Our former decisions sufficiently indicate that, in the determination of claims for accidental injuries causing hernia, the commission proceeds on the erroneous theory that no proof is sufficient,

unless there is established adequate external force at the point of the hernia to produce rupture of the tissues evidenced by ecchymosis, immediate prostration or other violent symptoms of injury. Compensation claims are not to be determined on preconceived medical theories, but are to be considered on the evidence presented in the individual case with a view to determine whether, under the definition of an accidental injury under the letter and spirit of the Workmen's Compensation Act, the particular claim has been established by a fair preponderance of proof. This was carefully pointed out in Klika v. Ind. School Dist. 161 Minn. 461, 202 N. W. 30. See also Frederickson v. Burns Lumber Co. 163 Minn. 394, 204 N. W. 161, and Klika v. Ind. School Dist. infra, page 55. There was nothing inherently improbable in the testimony of Mr. Wilkins or his witnesses, and we regard the employer's expert to rather support than otherwise a finding of a compensable injury under the law. We therefore think the evidence in this case demanded findings in favor of the employe, and the decision to the contrary is reversed and the case remitted to the Industrial Commission with direction to make proper findings awarding compensation for the injury. An attorney's fee of $50 on this appeal is allowed.

Reversed and remanded.