## JOHN MOSCHOGIANIS v. CONCRETE MATERIAL & MANUFACTURING COMPANY AND ANOTHER.[1]

January 10, 1930.

No. 27,591.

*Peter E. Kamuchey* and *William W. Fink,* for relator.

*Sexton, Mordaunt & Kennedy,* for respondent employer and Union Indemnity Company, its insurer.

HILTON, J.

Certiorari to the industrial commission to review its order denying compensation to employe.

This is a hernia case. The decision of the referee in favor of employe was reversed on appeal by the vote of two commissioners, the other filing a dissent. On the appeal hearing there was no new evidence taken, the transcript of the evidence and proceedings being used. Only two witnesses gave testimony, the employe and Dr. Culligan, the attending and operating physician to whom he was sent by the employer.

Employe, 20 years of age, had always been strong and healthy. He was employed as a truck driver. At about eight o'clock a. m. on the day in question, with the help of another man, he began to load his truck with 140 bags of cement, each weighing 95 pounds. This loading was done from a platform practically on a level with

[1]Reported in 228 N. W. 607.

the floor of the truck. While proceeding with the load toward his employer's place of business (1520 East Minnehaha street) unbeknown to employe, 15 of these bags fell off onto a street car track; upon his attention being called to this occurrence, he backed the truck and unassisted commenced reloading the bags. The motorman in charge of a street car stopped by the obstruction continuously sounded the car gong to hurry up the clearing of the track. Employe, working hurriedly, lifted the bags a distance of at least five feet. This exertion tired him. He reached his destination in about 15 minutes and unloaded the bags onto a conveyor. With help he reloaded the truck with light weight building blocks and started for Raymond and Commonwealth avenues, the place at which they were to be delivered. When near there he felt a sharp pain in his right groin. Thinking the pain was caused by cramps, he dismounted from the truck and endeavored to relieve the pain by walking around. This did not prove effective. He then proceeded and after delivering the blocks returned to his employer's place of business about 12:30 p. m., reported his condition and was excused from further work on that day. The next morning he felt fairly well. When going on a street car toward his place of work, he again felt a severe pain in the right groin and fainted. He was examined at different times by Dr. Culligan and three other doctors, including one to whom he was sent by insurer. He went to a hospital.

Dr. Culligan at first diagnosed the injury as an indirect inguinal hernia but upon operating found that it was not that kind. It was a direct inguinal hernia. There was a definite tear (one and one-half inches long) of the external oblique fascia in the area of the Hesselbach triangle, a condition rarely occurring. There was a weakness of the abdominal wall "in such a way that he had a bulge from the area where the direct inguinal hernias come and in that way he had a hernia behind the area of the tear which came out and caused a weakness of that wall." The doctor further testified that such tears come from violence and that the exertion of employe in reloading the bags of cement in the way he did would be such violence, stating that "the type of work which he described would

be sufficient to cause the condition," and further that he felt "that the type of work which he [employe] was doing at that time was sufficient to cause the findings which were present in him * * * any time during that time when he was doing that heavy lifting when he was putting the sacks back on the truck." His testimony also was that there was no scar in the region operated that would indicate any previous trouble; that a man would not necessarily feel any pain at the time the tear took place "because there is no bulging through the point of the tear, it is the sudden bulging through the area which has weakened which causes the pain." The · pain comes later when the bulging passes through the torn area. This evidence sounds reasonable and probable. It has to do with a subject lying peculiarly within the field of expert medical knowledge. It is undisputed. Evidently the testimony of Dr. Culligan was not open to successful attack.

The two commissioners state: "There is no material dispute or conflict in the evidence." We recognize the weight that should be given to the findings of the commission. However there was nothing inherently improbable in the evidence. The undisputed evidence as to which there can be no suggestion of improbability or inconsistency forces us to the conclusion that the decision of the majority of commissioners is wrong. Positive undisputed testimony of unimpeached, competent and credible witnesses cannot be disregarded unless, due to its improbability or inconsistency, a reasonable ground for disregarding it appears in the record. O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, and cases cited; Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913. On the authority and reasoning of Wilkins v. Ben's Home Oil Co. 166 Minn. 41, 207 N. W. 183; Klika v. Independent Sch. Dist. No. 79, 166 Minn. 55, 207 N. W. 185; Babich v. Oliver I. Min. Co. 157 Minn. 122, 195 N. W. 784, 202 N. W. 904; Blair v. Village of Coleraine, 177 Minn. 376, 225 N. W. 284, we remand the cause with directions to award the compensation provided by statute for the disability the employe sustained. Attorney's fees in the sum of $75 are allowed.

Reversed and remanded.