## VICTOR BRAJAN v. OLIVER IRON MINING COMPANY.[1]

October 3, 1930.

No. 27,999.

*Gannon, Strizich & Kleffman,* for relator.
*Dennis F. Donovan,* for respondent.

HOLT, J.

Certiorari to review a decision of the industrial commission disallowing relator compensation for an alleged accidental injury suffered in the course of his employment.

On January 8, 1929, relator, a man about 42 years old working for defendant in one of its mines and who with three others was erect-

[1] Reported in 232 N. W. 342.

ing timbers to support the roof or overhead in a drift, had occasion to lift or hold one end of a cap timber 8½ or 9 feet long weighing about 300 pounds. As he thus lifted on the timber a sharp pain passed through his left groin producing a feeling as if he were "crazy or drunk," according to his imperfect description. This happened shortly before the noon lunch hour. The cap was lifted in place on top of the posts, and he walked some 2,000 feet from the place they were timbering to the shaft and up the 200-foot ladder to the surface, where the lunch was eaten, then went back to his work, in which he continued the rest of the day and one or two days thereafter. He told his fellow employes that he was hurt; also mentioned it to a superior.

The miners had an arrangement with a clinic conducting the Rood Hospital to care for themselves and their families, for which a small monthly payment was made. So when complaint of an injury was made to the foreman, relator was told to go to the doctor. He said he went to the Rood Hospital the evening of January 8 but found the door closed. The day after the alleged injury he consulted one of the doctors who later operated upon him, was told that he had a hernia, and advised to have it operated. He submitted to the operation on January 19, 1929.

The claim here is that compensation should be awarded not only for the disability resulting from the hernia but also from the nervous or hysterical condition that now afflicts relator and which he contends came with the hernia.

Relator produced a physician of experience and high professional standing, who gave as his opinion that the hernia was produced in the effort to lift or hold up the end of the cap, basing such opinion solely upon the veracity of relator's testimony. He would however not venture the opinion that the hernia caused the nervous condition, but considered that more of a functional character and not due to any actual disease of an organic character of the nerve system—"hysterical neurosis." He thought it might be associated with the lifting strain, but that "a neurosis of this type is an emotional disturbance and that the development of it would be consequent upon anxiety or fright rather than anything else." We need

not again refer to this trembling or neurosis for it cannot be traced to any change in "the physical structure of the body" produced by the lifting of the cap. This physician had not seen relator until a long time after the operation; and he readily admitted that, if the two doctors who operated truly stated the physical condition of the hernia and contiguous tissues in the testimony they gave, the hernia was of long standing and was not the result of the lift.

In this situation of the record it was up to the triers of fact to determine whether to accept as true relator's testimony or that of the two surgeons who performed the operation. If the latter was accepted, then upon the opinion of relator's own medical expert the conclusion would be inevitable that the hernia existed for months or even years, before lifting the cap, in the same form and condition as it was after such lifting. Relator's attorney concedes that where the findings of the industrial commission are based upon conflicting testimony they cannot be disturbed by this court. Prior decisions to that effect are cited in Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635.

But the appeal rests in part upon the claim that relator's uncontradicted testimony, that he had no externally noticeable hernia prior to the lifting, that in the act suddenly intense pain was experienced, and that immediately thereafter the hernia appeared, is not inherently improbable nor impeached by surrounding circumstances and must be accepted as true by the triers of fact (O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430); and in part on the proposition that the triers of fact as well as two of respondent's medical experts failed to recognize that a potential hernia was by the lifting forced through the inguinal rings producing a complete hernia with consequent disability, which is compensable under Bauman v. Roth Downs Mfg. Co. 177 Minn. 98, 100, 224 N. W. 459, 460, where it is said:

"Under the compensation act, an injury is compensable when it excites, stimulates, arouses or moves to action an existing latent condition so as to result in disability. Therefore medical theory of hernia as the result of a disease has little or no bearing on hernia

as the cause of industrial disability. We are concerned with the legal cause only." Authorities are cited.

With the law as stated in the two cases mentioned, can it be said that the pivotal finding is not sufficiently supported that relator "did not meet with an accidental injury to his person and that said injury did not arise out of and in the course of his employment with said employer?" The question has really been answered by what has been above stated in respect to the medical testimony offered by relator, which is that if the conditions were as stated by the doctors who operated the hernia it was not of recent occurrence. There were also in the evidence facts and circumstances that the lifting did not aggravate or complete an existing or potential hernia so as to produce disability.

In the cases where compensation for hernia was allowed either by the commission or by this court, the operation undertaken soon after the accidental injury disclosed some recent tear in the surrounding tissue so that it came within the statutory definition of "an unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body." Babich v. Oliver I. Min. Co. 157 Minn. 122, 125, 195 N. W. 784, 785, 202 N. W. 904; Klika v. Independent Sch. Dist. No. 79, 161 Minn. 461, 202 N. W. 30; Frederickson v. Burns Lbr. Co. 163 Minn. 394, 204 N. W. 161; Wilkins v. Ben's Home Oil Co. 166 Minn. 41, 207 N. W. 183; Bauman v. Roth Downs Mfg. Co. 177 Minn. 98, 224 N. W. 459, were all cases where operation soon after the accidental injury revealed a recent hernia and negatived the existence of one prior to the claimed accident. The only hernia case to which our attention has been drawn where compensation was awarded in this court contrary to the decision of the commission, without the evidence which an operation could divulge, is Dippold v. F. B. Canada Lbr. Co. 169 Minn. 195, 210 N. W. 876; but there the evidence of the accidental injury was so clear, persuasive, and uncontradicted that it compelled a finding in favor of the employe.

In the case at bar there was the testimony of the operating doctors that no recent tear or lesion or evidence thereof was found. But

more than that, the doctor who examined relator the day after the lifting could manipulate the hernia without causing any pain in the ring or surrounding parts; and when the operation occurred there were adhesions of the sac outside the outer inguinal ring showing conclusively that the hernia was of long standing and had not been forced through the outer ring by the lifting. We are not holding and do not intend to hold that a strain which completes a potential inguinal hernia by forcing the bowel through the outer ring does not "produce at the time injury to the physical structure of the body." But we do hold that there is here evidence which if accepted as true warrants the finding that there was no change produced in the physical structure of the body, that the bowel had repeatedly and for a long period of time been in the same position where the surgeon found it the day after the alleged injury—a position where it readily passed in or out depending on whether relator stood erect or lay on his back. In short, the condition testified to by the doctors who operated disputes directly relator's testimony that there had been no outward manifestation of hernia previous to the lifting of the timber.

We hardly need call attention to the medical testimony that accidental injury producing inguinal hernia is usually followed by great distress and continued pain, so that if such had been the injury suffered relator likely would not have walked and climbed or worked as he admits he thereafter did. Such testimony also is to the effect that in a hernia of long standing, in the condition the operating doctors testified relator's was, a strain may catch a fold of the bowel so as to cause a temporary severe pain. In brief, the testimony is such that we cannot say either that relator's version of the claimed accidental injury is uncontradicted or that it is unimpeached by surrounding circumstances; and the commission's finding which rejects his claim of a suffered accidental injury must stand.

The decision is affirmed.