CLINTON M. MILLER, *Appellant*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Respondent.*[1]

[1] Reported in 94 P. (2d) 764.

*V. D. Bradeson,* for appellant.

*The Attorney General* and *J. A. Kavaney, Assistant,* for respondent.

STEINERT, J.—This is a proceeding under the workmen's compensation act. The judgment of the superior court affirmed an order of the joint board of the department of labor and industries closing the claim of an injured workman with an allowance for time loss and an award for permanent partial disability. The workman, deeming himself aggrieved by the order and judgment, has appealed to this court.

The questions to be determined on the appeal are (1) whether appellant's condition should have been classified as a total disability, either permanent or else temporary, rather than as a permanent partial disability, and (2) whether or not the amount of the award was proper and just.

The facts material to the consideration of these questions are as follows: Appellant, Clinton M. Miller, was a longshoreman, twenty-six years of age, strongly built and weighing about one hundred seventy-eight pounds. He had been doing heavy manual work for about nine years. In April, 1937, while helping to load some heavy bales of pulp at a Tacoma dock, he experienced what he termed a "twinge" in the lower part of his back. He continued his work, however, for six days and then quit for a period of nine days for treatment. Resuming his employment, he worked regularly at the dock until, on August 4th, while helping to lift a drum of oil weighing about five hundred pounds, he suffered a severe sprain of the lumbosacral joint. On account of the pain, appellant was unable to work for about a month. Between September 3rd and December 10th he worked intermittently about ten days. From December 10th until the following

April he did not work at all, and during that entire period was under the care of a physician, who, with the consent of the department, prescribed a sacroiliac belt and administered a course of intravenous injections.

On March 24, 1938, at the direction of the department, appellant was examined by another physician, who later reported that appellant had no disability resulting from the injury of August 4, 1937, and that he should be requested to go back to work, with no permanent partial disability rating. On April 4, 1938, the supervisor of the department entered an order closing the claim with payment for time loss to April 1st, but with no allowance for permanent partial disability. Thereupon, appellant filed an application for, and was granted, a rehearing before the joint board.

The joint board then referred the matter to a commission of medical specialists for examination of, and report concerning, appellant. On May 31, 1938, the commission made a report of its findings to the effect that there was a definite tenderness at the lumbosacral joint and that the X-ray films showed a congenital absence of the neural arch of the first sacral segment, and further reciting, as its conclusions, the following:

"It is our opinion that (1) The claimant's condition is not fixed; (2) That his disability—in part at least is due to the injury of which he complains; (3) The claimant is not able to carry on a gainful occupation; (4) Treatment by surgical operation is indicated. We believe that a well planned and efficiently executed fusion operation including the 5th lumbar and upper two sacral segments is definitely indicated in this case."

On June 1, 1938, the rehearing before the joint board began. The report of the specialists was offered in evidence and the testimony of appellant and his witnesses, including his attending physician, was taken.

The physician testified that appellant was suffering from a lumbosracro-iliac ailment; that his condition had not materially improved; that further medical treatment would be of no value; and that the only thing that possibly could do appellant any good would be a surgical operation, but that even an operation offered only a fifty-fifty chance of improvement. The physician was not asked whether appellant's disability was total or partial. The rehearing was then adjourned to a later date for the taking of testimony offered by the department.

In the interim, that is, on July 8, 1938, the department informed appellant, who was then in Portland, Oregon, that the evidence in the case indicated the advisability of having a fusion operation upon his spine and authorized appellant to have it performed by a certain orthopedic specialist in that city. Appellant promptly notified the department that he rejected the proposal, and further requested that his case be closed with a lump sum settlement.

The department thereupon again referred the matter to the commission of specialists for further examination of appellant and for report as to whether appellant's condition was of traumatic origin and the result of the injury complained of and, if so, whether his condition was fixed and, if fixed, the extent of permanent partial disability due to the injury, to be expressed in terms of percentage as compared to a maximum of the maximum award for unspecified disability amounting to eighty degrees; or, if his condition was not fixed, whether further treatment was indicated and, if so, the treatment recommended; and also as to whether appellant was able to carry on a gainful occupation. On July 26, 1938, the commission made its report, which, after confirming its former report, concluded as follows:

"We are of the opinion that he has an extensive permanent disability, partly due to a congenital weakness as formerly described, and partly due to his injury to this already weakened structure, which has resulted in a chronic strain at the lumbosacral area and the formation of localized traumatic arthritis.

"It is our opinion further that he should be awarded a PPD [permanent partial disability] of 40 degrees as a result of the injuries he received in April and in August of 1937."

The rehearing was resumed September 9, 1938, at which time the testimony of the three specialists and the physician who first recommended that appellant's claim be closed was taken. The three specialists testified that, in their opinion, an operation would greatly improve appellant's condition, although such result could not be predicted with certainty; that the fusion should be successful if the operation was properly performed; that appellant's present infirmity was produced by a combination of the injury and a congenital weakness of his back; that such infirmity then constituted a permanent partial disability; and that, in their opinion, appellant should have a rating of forty degrees (which is equivalent to one-half of the maximum) permanent partial disability.

Only one of the three specialists testified directly upon the question whether appellant was able to engage in a gainful occupation. With reference to that matter, the witness testified that appellant was not totally disabled and that, while he would not be able to do heavy manual lifting, he "could go ahead and do light work."

Each of the three specialists was questioned as to how he arrived at the figure of forty degrees for permanent partial disability. One of them stated that they had taken into consideration the congenital anomaly which caused a weakened condition of ap-

pellant's back and that they thought they were dealing fairly with him in classifying him in such a way as to give him fifty per cent of the highest amount allowable for a permanent partial disability not specifically described in the statute. The second specialist testified that the award was made for appellant's condition as it then existed, which was a sprain superimposed on a congenitally weak back; he further testified that the basis of the award was the loss of function. The third specialist concluded that appellant was not totally disabled and that, in justice both to the state and appellant, forty degrees was a proper figure.

The fourth medical witness, who had examined appellant on March 24, 1938, testified that the workman had a congenitally weak back; that, in the opinion of the witness, the pain suffered by appellant came from the use of his back during hard labor rather than from injury; that, when the witness made the examination, he thought that appellant was able to work, but that appellant should not follow hard manual labor.

Later, at a continued hearing, appellant called, in rebuttal, a physician witness, who testified that appellant had a small congenital defect but that it did not materially contribute to the ailment; that appellant's condition was due to chronic lumbosacral strain which might be remedied either by complete rest or by a fusion operation, although there was no assurance that the latter would be successful; and that appellant could not in his condition perform hard manual labor, but that there were many types of sedentary work in which he could engage.

At the conclusion of the rehearing, the joint board made a summary of the proceedings, from which it concluded that appellant's permanent partial disability due to injury did not exceed forty degrees, and that

the permanent partial disability, if any, in excess of forty degrees was not due to injury but to congenital defects. Basing its findings on this summary, the joint board entered an order directing the supervisor of the department to reopen the claim, to award the appellant additional time loss compensation, together with forty degrees permanent partial disability, and to close the claim on that basis. The order of the joint board was affirmed by the trial court.

We now take up the questions involved upon the appeal.

■ Appellant contends, first, that his condition was *not fixed,* and that, therefore, he could not be given a rating of permanent partial disability.

The rule in this state undoubtedly is that, before an allowance can be made for a permanent partial disability, the condition of the injured workman must have reached a fixed state. *Ray v. Department of Labor & Industries,* 177 Wash. 687, 33 P. (2d) 375; *Lackey v. Department of Labor & Industries,* 179 Wash. 594, 38 P. (2d) 345; *Elliott v. Department of Labor & Industries,* 187 Wash. 656, 61 P. (2d) 291, 188 Wash. 703, 62 P. (2d) 1343.

Appellant's contention is based upon the first report of the specialists, in which they found that his condition was not fixed; and upon the statement in their second report that, in their opinion, the claimant's condition was the same as that expressed in their former report.

The record discloses that the first report was made on the assumption that an operation would be performed, from which the doctors concluded that appellant's condition was not fixed, because, in their opinion, surgical treatment would either rectify or materially improve his condition; while the second report was made upon the assurance that no operation

would be had and upon the doctors' belief and decision that the condition was permanent. Moreover, regardless of any prior reports, there is ample evidence to support the finding of the department that appellant's condition had become fixed, because, without an operation, no improvement could be expected. Appellant's condition having become fixed, it was necessary for the department to determine whether the disability was total or partial. Upon that question, the evidence abundantly supports the finding that the fixed condition was one of permanent partial disability. We, therefore, conclude that the classification made by the department should be affirmed.

■ The second question is whether, for the disability as classified by the department, the amount of the award was proper and just.

Compensation for permanent partial disability is prescribed by Rem. Rev. Stat., § 7679 [P. C. § 3472] (f). That section sets up a schedule of amounts allowable for specifically described disabilities, and then proceeds:

"Compensation for any other permanent partial disability shall be in the proportion which the extent of such other disability shall bear to that above specified, which most closely resembles and approximates in degree of disability such other disability, but not in any case to exceed the sum of two thousand four hundred dollars ($2,400.00) . . ."

The disability shown in this case is not one of those mentioned in the schedule, and, hence, the amount of allowable compensation must be estimated by a proper application of the statutory provision just quoted.

In determining the correct amount of compensation, it becomes necessary to decide whether appellant's existing disability is to be considered as integral or whether it is to be regarded as divisible and, thus,

attributable in part to trauma and in part to a pre-existing congenital defect. The findings of the joint board seem to indicate that in awarding appellant compensation for permanent partial disability of forty degrees, the board limited the allowance to disability due to trauma only, and did not include so much of the disability as may have been due to the congenital anomaly. If that was the intention of the department, we are of the opinion that it erred.

We have held in an unbroken line of decisions that, if an injury, within the statutory meaning, lights up or makes active a latent or quiescent infirmity or weakened physical condition occasioned by disease, then the resulting disability is to be attributed to the injury, and not to the preexisting physical condition. *Ray v. Department of Labor & Industries,* 177 Wash. 687, 33 P. (2d) 375; *Brittain v. Department of Labor & Industries,* 178 Wash. 499, 35 P. (2d) 49; *McGuire v. Department of Labor & Industries,* 179 Wash. 645, 38 P. (2d) 266; *Rikstad v. Department of Labor & Industries,* 180 Wash. 591, 41 P. (2d) 391; *Johnson v. Department of Labor & Industries,* 184 Wash. 567, 52 P. (2d) 310; *Pulver v. Department of Labor & Industries,* 185 Wash. 664, 56 P. (2d) 701; *Matson v. Department of Labor & Industries,* 198 Wash. 507, 88 P. (2d) 825.

If this be true with respect to a weakened physical condition resulting from disease, it must likewise be true with respect to a similar infirmity resulting from some structural weakness of the body. As we have many times stated, the provisions of the workmen's compensation act are not limited in their benefits to such persons only as approximate physical perfection, for few, if any, workmen are completely free from latent infirmities originating either in disease or in some congenital abnormality. It is a fundamental prin-

ciple which most, if not all, courts accept, that, if the accident or injury complained of is the proximate cause of the disability for which compensation is sought, the previous physical condition of the workman is immaterial and recovery may be had for the full disability independent of any preexisting or congenital weakness; the theory upon which that principle is founded is that the workman's prior physical condition is not deemed the cause of the injury, but merely a condition upon which the real cause operated. *Hartz v. Hartford Faience Co.,* 90 Conn. 539, 97 Atl. 1020; *Studebaker Corp. v. Jones,* 104 Ind. App. 270, 10 N. E. (2d) 747; *Doane v. Board of Commissioners,* 163 So. (La. App.) 717; *Wilkins v. Ben's Home Oil Co.,* 166 Minn. 41, 207 N. W. 183; *Dymak v. Haskins Bros. & Co.,* 132 Neb. 308, 271 N. W. 860; *Vallee v. Spaulding Fibre Co.,* 89 N. H. 285, 197 Atl. 697; *Gorman v. Miner-Edgar Chemical Corp.,* 16 N. J. Misc. 170, 198 Atl. 404; *Cole v. State Highway Department,* 190 S. C. 142, 2 S. E. (2d) 490.

Applying this principle to the instant case, we are of the opinion that the accident or injury was the proximate cause of appellant's ultimate disability, and that his prior congenital weakness was but a condition upon which the injury became operative. The evidence discloses that appellant for many years had been undergoing arduous manual labor and, prior to the accident, was not suffering from the congenital defect.

In our consideration and determination of this particular question, we have not overlooked Rem. Rev. Stat., § 7679 [P. C. § 3472] (g), which provides, in part, as follows:

"Should a workman receive an injury to a member or part of his body already from whatever cause permanently partially disabled, resulting in the amputa-

tion thereof or in an aggravation or increase in such permanent partial disability but not resulting in the permanent total disability of such workman, his compensation for such permanent partial disability shall be adjudged with regard to the previous disability of the injured member or part and the degree or extent of the aggravation or increase of disability thereof."

In *Elliott v. Department of Labor & Industries,* 187 Wash. 656, 61 P. (2d) 291, modified and clarified in 188 Wash. 703, 62 P. (2d) 1343, we seem to have given that section a construction which would authorize the department to determine, in the exercise of its judgment or discretion, to what extent the disability was due to a prior congenital weakness of the workman's back and to what extent it was due to the injury.

We have reconsidered the holding in the *Elliott* case and are now of the opinion that its interpretation of Rem. Rev. Stat., § 7679 (g), respecting the authority of the department, was incorrect. We are of the view that Rem. Rev. Stat., § 7679 (g), is applicable only to cases in which the workman already is, *in fact,* permanently partially disabled within the meaning of the workmen's compensation act, but that it does not apply when the preexisting weakened or congenital condition, independent of the subsequent injury, has not, in any way, incapacitated the workman or has not, of itself, constituted a disability. For the reasons given upon the question under consideration, we conclude that the department should have awarded appellant compensation for his entire disability, to the extent that it was found to exist, without regard to the congenital defect.

In its brief, the department takes the position that appellant is virtually seeking a pension; and that, since he refused to submit to the operation, he should not be permitted to recover. Reliance is placed on

Rem. Rev. Stat., § 7688 [P. C. § 3481], which provides, in part, as follows:

". . . if any injured workman shall persist in unsanitary or injurious practices, which tend to imperil or retard his recovery, or shall refuse to submit to such medical or surgical treatment as is reasonably essential to his recovery, the commission may reduce or suspend the compensation of such workman. . . ."

That provision of the statute has reference only to a reduction or suspension of monthly payments which are being made to an injured workman during the period of recuperation from an injury. It does not apply to a lump sum settlement for a permanent partial disability which has been determined by the department after the condition of the workman has become fixed. For these reasons, it becomes unnecessary to discuss further the question suggested by the department.

Having now passed on all the questions presented upon the appeal, we approach the matter of a proper disposition of the case.

Upon the record before us, we are unable to find or declare the extent, or degree, of appellant's permanent partial disability, for neither the evidence nor the findings of the board afford any certainty upon the subject. The evidence merely indicates that the specialists composing the commission were of the opinion that, in attributing fifty per cent of the disability to the injury, a liberal allowance to appellant was made. The findings of the department were to the effect that the disability due to the injury did not exceed forty degrees; and that, if there were any disability in excess of that degree, it was due to congenital defect. But neither the evidence nor the findings established or determined the extent of the entire disability regardless of the congenital defect. To fix the amount

of the allowance to be made to appellant, it is necessary, first, to determine the extent or degree of his entire permanent partial disability.

The judgment is reversed, and the cause remanded with direction to the trial court to refer the matter to the joint board for further hearing, consideration, and final determination, in accordance with the views herein expressed.

ALL CONCUR.

