**FILED**
**APRIL 29, 2014**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DIANA K. LELAND, | ) | No. 31333-6-III |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| J.R. SIMPLOT CO., | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent and | ) | |
| Cross-Appellant, | ) | |
| | ) | |
| DEPARTMENT OF LABOR AND | ) | |
| INDUSTRIES OF THE STATE OF | ) | |
| WASHINGTON, | ) | |
| | ) | |
| Respondent. | ) | |

RAWSON, J.* — Diana Leland suffered an industrial injury in 2005 while working

at J.R. Simplot Company. After receiving time-loss benefits and medical care, the

Department of Labor and Industries (Department) closed Ms. Leland's claim without an

award for permanent disability. The Board of Industrial Appeals (Board) affirmed the

---

* Judge Henry A. Rawson is serving as judge pro tempore of the Court of Appeals
pursuant to RCW 2.06.150.

order. Ms. Leland appealed to superior court, contending that she was permanently disabled due to a pain disorder resulting from the accident. The superior court concluded that Ms. Leland's physical conditions caused by the workplace injury reached maximum medical improvement. However, the pain and disability caused by the workplace injury and prolonged by her preexisting psychological pain disorder had not reached maximum medical/psychological improvement and may respond to further psychological treatment. Thus, the court reversed the claim closure and remanded to the Department for further treatment. Both Ms. Leland and JR Simplot appeal. We affirm the decision of the superior court.

## FACTS

In January 2005, Ms. Leland slipped and fell while working as a janitor at J.R. Simplot, a self-insured employer. She injured her right knee, low back, and hip. Ms. Leland filed a claim for benefits with the Department. She was paid time-loss benefits and given medical treatment. Ms. Leland returned to light work about one year after the injury, but stopped soon after due to pain.

On August 12, 2008, the Department issued an order ending time-loss compensation as paid through March 2008, and closed the claim without an award for permanent disability. Ms. Leland appealed to the Board. She contended that she was

2

permanently disabled due to her low back, right hip, and right knee injury, as well as a resulting mental health pain disorder condition.

The Board held a hearing. Ms. Leland presented testimony of her attending physician Dr. Richard Bunch and her physician's assistant John Betz. Mr. Betz reported that Ms. Leland complained of her back in the years following the accident. He found the pain was consistent with someone with a back injury. Mr. Betz found that more probable than not, the industrial injury to a root nerve in the back caused the problem. Dr. Bunch's testimony reiterated the points made by Mr. Betz.

Ms. Leland also presented testimony from her physical therapist Randy Bruce. Mr. Bruce treated Ms. Leland's lower back pain in 2005. In 2007, he conducted a physical capacities evaluation (PCE) of Ms. Leland. He found that she was capable of working five hours per day, but at a below light level because of significant pain and limited range of motion in her lower back and hip area. He believed that her conditions reflected in the PCE had steadied at the time of closure in August 2008. However, he also stated that he recently began treating Ms. Leland again and her functionality improved over the 2007 PCE.

Last, Ms. Leland presented testimony of Dr. John Gilbert, a clinical psychologist who treated Ms. Leland in 2006. Dr. Gilbert diagnosed Ms. Leland with pain disorder

3

associated with both psychological factors and a general medical condition. He described pain disorder as a less precise diagnosis than posttraumatic stress disorder or depression. He stated that pain disorder involves the patient's approach to dealing with their pain and psychological factors that can affect their response to pain symptoms. Dr. Gilbert described the effect of pain disorder in general and in reference to Ms. Leland. He stated that the effect of the disorder is an increase in the patient's focus on the pain, the patient's perception of the pain, and the patient's management or response to the pain in terms of their level of activity and their general functional level. He found Ms. Leland's barriers to be a magnification of symptoms by elaborating or expressing more symptoms than average. Ms. Leland also feared pain and avoided activities that she expects to cause pain. She believes she needs surgery.

J.R. Simplot presented the testimony of Dr. Michael Friedman, a licensed physician with special training in psychoanalysis medicine. Dr. Friedman reviewed Ms. Leland's history and conducted a physical evaluation of Ms. Leland. Dr. Friedman diagnosed Ms. Leland with major depressive disorder and pain disorder with psychological features. He explained that pain disorder is a coping mechanism for serious stress that causes a shift in a person's thinking to preoccupation with pain. He

4

stated that Ms. Leland developed the pain disorder as a result of a history of chronic stress in her life. He did not believe that she fabricated the pain.

J.R. Simplot also presented testimony of several other expert witnesses that examined Ms. Leland and her medical history. Dr. Royce Van Gerpen provided treatment to Ms. Leland from October 2006 to June 2007 for her spine condition. He concluded that Ms. Leland's spine condition had reached maximum medical improvement by August 2008. Dr. Van Gerpen referred Ms. Leland to Mr. Bruce for the PCE. However, after receiving the results, he found the PCE invalid because of the discrepancies between the PCE and his own examinations. He found Mr. Bruce's ratings significantly lower than the level Ms. Leland's anatomy justified. In addition to Dr. Van Gerpen's testimony, J.R. Simplot presented testimony from Dr. Michael Barnard who also challenged the validity of the PCE, and did not think Ms. Leland was limited to five hours of work per day.

Physical therapist Elyse Berkovitch testified that she reviewed Mr. Bruce's PCE and formed the opinion that the PCE was not reliable. She stated the results of the PCE indicated an inconsistent or nonmaximum effort on the test. She also discredited the PCE because Mr. Bruce had a treatment relationship with Ms. Leland, which is against the guidelines for administering the test. She also discredited some of the movements that Mr. Bruce used in administering the test.

5

Two vocational counselors testified at the hearing. Fred Cutler suggested that Ms. Leland was not employable full time, based off of the PCE and Dr. Bunch's opinions. On the other hand, Robert Crouch, who was Ms. Leland's vocational counselor, found Ms. Leland employable from March 2008 to August 2008. Mr. Crouch testified that even if Dr. Bunch restricted Ms. Leland to five and one-half hours per day, she would still be employable.

The Board held that as of August 12, 2008, the conditions caused by the January 2005 industrial injury were fixed and not in need of further medical treatment. The Board concluded that the industrial injury did not proximately cause the mental health conditions diagnosed or described as depression or pain disorder. It found that Ms. Leland failed to present medical testimony demonstrating that she suffered from a ratable permanent impairment. The Board also held that Ms. Leland was not entitled to temporary disability or loss of earning power benefits from March 27 to August 12, 2008.

Ms. Leland appealed to Grant County Superior Court. The court reviewed the hearing testimony and reversed the Board's order. The court distinguished Ms. Leland's physical condition that resulted from the fall with the psychological pain condition that also resulted from the fall. The court concluded that Ms. Leland's physical condition that was proximately caused by the industrial injury reached maximum medical improvement.

6

However, the court concluded that the pain and disability proximately caused by the industrial injury and that resulted from her psychological pain disorder had not reached maximum medical or psychological improvement. The court found that the industrial injury did not cause Ms. Leland's pain disorder. However, the court found that the preexisting asymptomatic psychological pain disorder proximately caused her to experience greater pain and disability from the industrial injury and caused the pain and disability to continue beyond the time when the physical component of the industrial injury was resolved.

Thus, the court concluded that Ms. Leland may respond to further psychological treatment, making her entitled to further medical treatment as contemplated by RCW 51.36.010. The court also concluded that Ms. Leland was temporarily totally disabled from March 27, 2008, through August 12, 2008, and was entitled to loss of earning power benefits during this time period. The court remanded the matter to the Department for further treatment and proceedings consistent with the order.

Ms. Leland appeals. She contends that the industrial injury proximately caused the pain disorder and contributed to a total disability. J.R. Simplot cross appeals, contending that the superior court erred in awarding treatment for a condition not caused by the

7

industrial injury. Both parties assign error to the superior court's decision to remand for further psychological treatment.

## ANALYSIS

The findings and the decision of the industrial insurance board are prima facie correct; the superior court reviews this decision de novo. RCW 51.52.115. The superior court may substitute its own findings for that of the board if "'from a fair preponderance of credible evidence'" that the board's findings and decision are incorrect. *McClelland v. ITT Rayonier, Inc.*, 65 Wn. App. 386, 390, 828 P.2d 1138 (1992) (quoting *Weatherspoon v. Dep't of Labor & Indus.*, 55 Wn. App. 439, 440, 777 P.2d 1084 (1989)).

Absent summary judgment, this court's review of the superior court's decision is limited to the examination of the record to see whether substantial evidence supports the court's findings and whether the court's conclusions flow from those findings. *Young v. Dep't of Labor & Indus.*, 81 Wn. App. 123, 128, 913 P.2d 402 (1996). "Substantial evidence supports a finding when the evidence in the record is sufficient to persuade a rational, fair-minded person that the finding is true." *Cantu v. Dep't of Labor & Indus.*, 168 Wn. App. 14, 21, 277 P.3d 685 (2012).

We review the evidence in the record in the light most favorable to the prevailing party. *Harrison Mem'l Hosp. v. Gagnon*, 110 Wn. App. 475, 485, 40 P.3d 1221 (2002).

8

We will not reweigh evidence; we leave whether the burden of persuasion has been met

to the trier of fact. *Id.* We defer to the superior court to weigh conflicting testimony.

*Weyerhaeuser v. Tacoma-Pierce County Health Dep't*, 123 Wn. App. 59, 65, 96 P.3d 460

(2004).

First, Ms. Leland contends that the superior court erred in concluding that the

industrial injury did not proximately cause her pain disorder. Ms. Leland urges this court

to place more emphasis on the testimony of her attending physicians.

The Industrial Insurance Act, Title 51 RCW, aims to provide a speedy remedy and

enable injured workers to become gainfully employed. RCW 51.04.010. A claimant is

entitled to disability benefits if an industrial injury is the proximate cause of a subsequent

condition. *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 7, 977 P.2d 570 (1999). To

establish that the subsequent conditions were proximately caused by the initial industrial

injury, testimony must show a causal relationship on a more probable than not basis.

*Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 477, 745 P.2d 1295 (1987).

In workers' compensation cases, the court is to give special consideration to the

attending physician's opinion. *Young*, 81 Wn. App. at 128-29. "This consideration is

reasonable in light of the fact that an attending physician is not 'an expert hired to give a

particular opinion consistent with one party's view of the case.'" *Id.* at 129 (quoting

9

*Intalco Aluminum Corp. v. Dep't of Labor & Indus.*, 66 Wn. App. 644, 654, 833 P.2d 390 (1992)).

Ms. Leland assigns error to the court's conclusion that the January 7, 2005 industrial injury did not proximately cause mental health conditions diagnosed or described as depression or pain disorder. She also challenges the related finding that explains this conclusion. The court found, "However, Ms. Leland's pre-existing asymptomatic psychological condition diagnosed as pain disorder proximately caused her to experience greater pain and disability from the physical industrial injury than she would have experienced without the presence of that psychological condition, and proximately caused such pain and disability to continue beyond the time when the physical industrial injury was resolved." Clerk's Papers (CP) at 1481. Ms. Leland contends the superior court should have found that the preexisting condition was related to an industrial injury and was therefore compensable.

While the court did not find that the injury caused Ms. Leland to develop a pain disorder, it did find that the industrial injury was affected by the preexisting pain disorder. The result was Ms. Leland's continued pain from the industrial injury even though the physical hip and back portion of the injury was resolved.

10

Substantial evidence supports the superior court's finding that Ms. Leland had a preexisting asymptomatic psychological condition diagnosed as pain disorder and that the disorder affected the industrial injury. Testimony by both mental health experts supports the finding. Dr. Gilbert testified Ms. Leland had at least two instances of severe trauma in her life prior to the industrial injury that predisposed her to the development of the pain disorder. He stated that the more trauma that a person experiences, the more likely they are to react strongly to the later trauma. While Dr. Gilbert testified the pain disorder was partially related to the industrial injury, he did not say that the pain disorder was caused by the industrial injury.

Similarly, Dr. Friedman testified that Ms. Leland's history of chronic stress caused her to develop the pain disorder as a coping mechanism. He stated that regardless of the industrial injury, she would have developed the condition. Using the metaphor of snowflakes falling on a weakened branch, he explained that pain disorders are caused by a compounding effect of stressful experiences that weaken a person until eventually there is a shift and preoccupation with pain. Dr. Friedman did not believe that the slip and fall was the reason Ms. Leland developed the pain disorder.

Neither party disputes that the pain disorder proximately caused her to experience greater pain and disability from the physical injury than she would have experienced

11

without the presence of that psychological condition. Nor do they dispute that the pain disorder proximately caused such pain and disability to continue beyond the time when the physical injury was resolved.

In applying the facts to the conclusions, the superior court did not err in concluding that the industrial injury did not proximately cause Ms. Leland's pain disorder. The pain disorder was a preexisting condition in place before the industrial injury. While the industrial injury proximately caused Ms. Leland pain and the pain continued past the physical injury due to the pain disorder, this does not lead to the conclusion that the industrial injury caused the pain disorder. The superior court's conclusion is not in error.

Essentially, Ms. Leland challenges the application of the facts to the law. She contends that a preexisting condition is included and compensable in the worker's claim if the work injury worsened or aggravated the condition. Thus, because the industrial injury affected the pain disorder, she contends that the court erred when it failed to conclude that Ms. Leland's pain disorder is a condition covered by the Industrial Insurance Act.

"A worker is entitled to benefits if the employment either *causes* a disabling disease, or *aggravates* a preexisting disease so as to result in a new disability." *Ruse*, 138

12

Wn.2d at 7. "[I]f an injury, within the statutory meaning, lights up or makes active a latent or quiescent infirmity or weakened physical condition occasioned by disease, then the resulting disability is to be attributed to the injury, and not to the preexisting physical condition." *Miller v. Dep't of Labor & Indus.*, 200 Wash. 674, 682, 94 P.2d 764 (1939). The accident or injury is the proximate cause of the worker's ultimate disability, and his or her prior mental weakness is but a condition upon which the injury becomes operative. *Id.* at 683. "In an aggravation case, the employment does not cause the disease, but it *causes the disability* because the employment conditions accelerate the preexisting disease to result in the disability." *Ruse*, 138 Wn.2d at 7.

Here, where the aggravated preexisting condition results in a new injury, it is the new injury that is covered, not the preexisting condition. Applying the rule in *Miller* to Ms. Leland's situation, the slip and fall caused both a physical back injury and pain. The industrial injury was aggravated by her preexisting pain disorder. The resulting disability was continued psychologically induced pain. Thus, the continued pain is the disability that is compensable, not the preexisting pain disorder. While psychological treatment may alleviate both the pain and the pain disorder simultaneously, Ms. Leland's disability determination cannot hinge on whether she continues to suffer from a pain disorder not related to the industrial injury at JR Simplot.

13

In sum, the superior court did not err in concluding that Ms. Leland's industrial injury did not proximately cause Ms. Leland's pain disorder. Also, the superior court did not misapply the law when it failed to consider Ms. Leland's pain disorder as a compensable injury.

The superior court did not err in concluding that the industrial injury did not cause the pain disorder.

Next, both parties disagree with the superior court's conclusion that the pain and disability had not reached maximum medical improvement and may respond to further psychological treatment, albeit for different reasons. They also disagree with the superior court's conclusion that Ms. Leland was entitled to further medical treatment as contemplated by RCW 51.36.010.

If a claimant's condition has stabilized so that no further medical treatment is required, the condition is "fixed" for purposes of closing the claim and determining the disability award. *Pybus Steel Co. v. Dep't of Labor & Indus.*, 12 Wn. App. 436, 439, 530 P.2d 350 (1975). A fixed state occurs when there is no further medical treatment that is likely to further improve his or her condition. *Dep't of Labor & Indus. v. Slaugh*, 177 Wn. App. 439, 446, 312 P.3d 676 (2013) *review denied*, No. 89667-4 (Wash. Mar. 31,

2014). Where further medical treatment is contemplated, the claim remains open so the worker can receive treatment. *Pybus Steel Co.*, 12 Wn. App. at 439.

An injured worker is entitled to proper and necessary treatment from a physician chosen by the worker. RCW 51.36.010(2)(a). A self-insurer pays for proper and necessary health care services that are related to the diagnosis and treatment of an accepted condition. WAC 296-20-01002. Proper and necessary health care services are reflective of accepted standards of good practice, are curative or rehabilitative, are not delivered for the primary convenience of the claimant and are provided at the least cost and in the least intensive setting. *Id.* The self-insurer stops paying for health care services once a worker reached a state of maximum medical improvement, meaning no fundamental change can be expected with or without treatment. *Id.*

Before an allowance can be made for a permanent disability, the condition of the injured worker must have reached a fixed state. *Miller*, 200 Wash. at 680. A worker is totally and permanently disabled only if his or her injury-caused impairments are of such severity that he or she is unable to perform any reasonably continuously gainful employment with his or her qualification that exist in the competitive labor market. *Fochtman v. Dep't of Labor & Indus.*, 7 Wn. App. 286, 294-95, 499 P.2d 255 (1972). The claimant bears the initial burden of proof showing a workplace injury caused the

15

inability to obtain work. *Leeper v. Dep't of Labor & Indus.*, 123 Wn.2d 803, 815, 872 P.2d 507 (1994). An ability to perform light or sedentary work of a general nature typically precludes a finding of total disability. *Herr v. Dep't of Labor & Indus.*, 74 Wn. App. 632, 636, 875 P.2d 11 (1994).

Substantial evidence supports the superior court's finding and conclusion that Ms. Leland's pain and disability may respond to further psychological treatment and has not met maximum medical improvement. Dr. Gilbert said treatment for pain disorders is normally authorized for 12 sessions, but that he was unsure why Ms. Leland only had 6. Even then, Dr. Gilbert said that Ms. Leland improved during her treatment sessions. He said that during the course of treatments, Ms. Leland was better at managing her pain, her activity level had increased, and that she was considering operating in-home day care or child care. She had improved in the global assessment of functioning. However, when specifically asked whether Ms. Leland had reached the maximum psychiatric or maximum psychological improvement at the end of the six sessions, he could not make that determination.

Given that Dr. Gilbert was the psychologist who provided treatment to Ms. Leland, this testimony provides substantial evidence to support the court's conclusion that establishes that Ms. Leland's pain induced by her psychological disorder had not reached

16

maximum medical or psychological improvement and that she may respond to more treatment. Additional treatments are proper and necessary to cure or rehabilitate Ms. Leland's psychological pain. Because the possibility for more treatment is available, and the treatment is necessary and proper under RCW 51.36.010(2)(a) and WAC 296-20-01002, the superior court did not commit an error by concluding that Ms. Leland was entitled to further medical treatment for the pain caused by the industrial injury.

Last, Ms. Leland challenges the superior court's decision to remand. She contends that the superior court should have found that she was totally and permanently disabled. We disagree. First, Ms. Leland's psychological pain condition was not fixed. The superior court found that Ms. Leland's psychological pain and injury had not reached a maximum medical improvement. This conclusion and related findings are supported by the testimony of Dr. Gilbert. Thus, Ms. Leland's psychological pain and disability condition was not in a fixed state and no allowance could be made for a permanent disability.

Second, while the superior court concluded that the physical condition had reached maximum improvement, it also found that the residual effects of the industrial injury did not preclude her from obtaining reasonably continuous gainful employment in the labor

17

market. The evidence supports the findings and conclusion. Dr. Barnard concluded that Ms. Leland reached maximum medical improvement when he saw her in November 2007. He stated that she still experienced pain, but there was no permanent impairment of her lumbar spine and original hip and knee injuries. He stated that she was capable of working full time with no restrictions.

Dr. Van Gerpen testified that Ms. Leland reached maximum medical improvement on her spine injury. He believed that Ms. Leland was capable of working full time in a light duty capacity. Even Mr. Bruce stated that he found Ms. Leland capable of working a five-hour work day, albeit with severe limitations, based on his physical capacity evaluation in 2007. The testimony from the experts shows that Ms. Leland's physical condition had reached maximum medical improvement and her condition did not prohibit her from reasonably continuously gainful employment.

The findings do not support a conclusion of total permanent disability. Thus, the superior court did not err in finding that Ms. Leland's pain and disability proximately caused by the industrial injury had not reached maximum medical or psychological improvement. The pain may respond to further psychological treatment. Ms. Leland is entitled to further medical treatment as contemplated by RCW 51.36.010. We affirm the

18

superior court's order remanding the matter to the Department for further treatment and proceedings.

The parties did not challenge the superior court's conclusion that Ms. Leland was a temporarily totally disabled worker during the period of March 27, 2008, and August 12, 2008, and that Ms. Leland is entitled to loss of earning power benefits. These conclusions remain valid and enforceable.

The superior court did not err when it concluded that Ms. Leland's pain and disability caused by the industrial injury had not reached maximum medical or psychological improvement.

Ms. Leland requests attorney fees for all legal work incurred in this appeal. Generally stated, RCW 51.52.130 provides for attorney fees to a prevailing person asserting their workers' compensation rights in an appeal. *See also Young*, 81 Wn. App. at 132. Ms. Leland was not granted additional relief in this appeal and is not the prevailing party on appeal. Her request for attorney fees on appeal is denied.

No. 31333-6-III
*Leland v. J.R. Simplot Co.*

Affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Rawson, J.P.T.

WE CONCUR:

Siddoway, C.J.

Fearing, J.